The defendant, Franklin Yancey, and E. G. Peoples, Jr., were together indicted on a charge of false pretense by falsely representing to M. B. Person, T. C. Bynum and J. M. Riddle (trading as Cumberland County Tobacco Warehouse) that the said Franklin Yancey and E. G. Peoples, Jr., together had entered into a contract to purchase leaf tobacco on the floors of various warehouses located in Cumberland County, and that E. G. Peoples, Jr., was lawfully authorized and empowered to draw drafts against the said Franklin Yancey in payment of same; that Franklin Yancey had made arrangements for the payment of such drafts so drawn upon presentation to the payee bank. Whereas, in truth and in fact the said E. G. Peoples, Jr., was not authorized to draw drafts against the said Franklin Yancey and the said Franklin Yancey had made no provision for the payment of said drafts when presented to the drawee bank; that such fact was known at the time to both Franklin Yancey and E. G. Peoples, Jr., "and such false representations were made by both of the said Franklin Yancey and E. G. Peoples, Jr., with the intent and purpose of misrepresenting the true facts with respect to the purchasing of leaf tobacco as aforesaid and with the intent and purpose of cheating and defrauding."
It is charged that by means of the said false pretense Yancey and Peoples obtained from Person, Bynum and Riddle a lot of leaf tobacco of the value $1,010.78, issuing therefor, "a worthless draft, check or order with intent then and there to defraud, against the statute in such case made and provided, and against the peace and dignity of the State."
Peoples was not apprehended and after a preliminary examination Yancey was tried and convicted at aforesaid March Criminal Term of Cumberland Superior Court.
Summarized as much as clarity will permit, the evidence was substantially as follows:
For the State, D. T. Perry testified that he was employed by the Tobacco Board of Trade of Fayetteville as secretary-treasurer and as sales supervisor covering the warehouses in Fayetteville. That he met Franklin Yancey, the defendant, about the 20th of August in Langdon's warehouse the first time in company with E. G. Peoples, Jr. Yancey asked witness if he had a check that Peoples had given him for membership in the Fayetteville Tobacco Board of Trade. The witness answered in the affirmative and Yancey said that he would take it up with a check of his own and wrote and delivered to witness a check for $75, which was dues; and witness turned over to him the check of Peoples. Witness further testified that Yancey told him Peoples was buying tobacco for him and one or the other would be following the sale. In consequence of this payment the witness put the membership in the name of Franklin *Page 315 
Yancey only, and withdrew Peoples' name. Witness stated that he saw the defendant Yancey on the tobacco market the next day and then he was gone; that is the next day after the transaction of the check; that he was gone a few days and returned to the market and told him he had been in the hospital.
J. M. Riddle testified for the State that he was part owner of the Cumberland County Tobacco Warehouse, the co-owners being Person and Bynum. Witness stated that on the 20th day of August the partners were engaged in selling tobacco under the name of Cumberland County Tobacco Warehouse and on that day he saw the defendant Franklin Yancey and E. G. Peoples, Jr., on the warehouse floor during the sale of tobacco. "Mr. Peoples bought some tobacco at my warehouse. Mr. Yancey came in there during the sale and conferred with Mr. Peoples; I don't know what he was talking about; he talked with him while we were selling on the floor. They bought something over a thousand dollars worth and Mr. Peoples was doing the buying, and if I make no mistake it was on the 20th day of August. He bought a thousand, ten dollars and something. I know it was the 21st or the 20th. The amount he bought was $1,010.78, on August 21, 1946. . . . I didn't go into the office until after the sale was over and at that time I saw them in the office at the time this draft was made. At the time I was in the office I don't know whether Mr. Yancey had come out or whether he had just gone in. I went back to the office to get a deposit on the baskets that the tobacco was in. They were taking my baskets and I requested a deposit and they asked me — I don't remember which one, — Mr. Peoples — was it all right to make the check for the baskets with this check and I told him no, to make me a separate check because I had to check the baskets through on the account, and he give me another check for the baskets. That is the draft he gave in payment for the tobacco, I believe it was Mr. Peoples who handed it to me." The witness further stated that he saw Peoples and Yancey there in the warehouse but did not know which one carried the tobacco away. That one or the other backed the truck up and loaded it, both being present, and they carried the tobacco away from the warehouse. On that same day Yancey or Peoples gave witness another draft for a deposit on the baskets. The draft was never paid. This draft was presented in evidence and shows to have been signed "Franklin Yancey by E. G. Peoples, Jr."
On the cross-examination the witness stated that the draft was signed "Franklin Yancey by E. G. Peoples." He further said that he "did not say Yancey was right there at the time Peoples gave the draft into the office; that he was right outside or just walked out of there, one, right there close in the warehouse or office, one. Mr. Peoples got the tobacco and got it up to the door and I told him I would have to have a deposit on the baskets and he asked if it would be all right to make it in one *Page 316 
check and I told him to make it separate" . . . and he drew a check for the baskets and one for the tobacco and gave it to the witness at the outgoing door where he loaded the tobacco on the truck. Witness stated that he had never seen Yancey before.
T. C. Bynum testified for the State that the draft representing payment for the tobacco was given on the 21st day of August and was signed "by Franklin Yancey by E. G. Peoples, Jr.," and that the draft has never been paid. He did not see the sale.
After the draft was returned he had a conversation with Franklin Yancey at his home in Virginia, asking him why the draft came back and Yancey said because he had not given anybody authority to sign his name to a draft; that it was fraud. Asked then why he stopped the draft given by him for the privilege of buying on the market, witness replied that he had been informed that there was no Tobacco Board of Trade in Fayetteville. As for the check for $1,010.78, his reason for declining to pay it was that no one had authority to sign it.
J. M. Riddle, recalled, testified that the check for $1,010.78 was given into the office. Peoples gave him the check and had not then gotten the tobacco off the floor.
At the end of the State's evidence the defendant moved for judgment of nonsuit, which was denied, and defendant excepted.
James W. Blanks testified for the defendant that he attended the trial in the recorder's court and heard the evidence of J. M. Riddle and heard him swear upon that occasion that he did not see Mr. Yancey at any time at his warehouse.
The defendant Franklin Yancey testified in his own behalf; that he lived in Virginia and was 23 years of age; that with his father he operates a tobacco warehouse in Lake City, Florida, and that he knew E. G. Peoples, Jr., having met him when he was at the Military Academy in Virginia; and that he had been employed as a floor sweeper in a warehouse operated by defendant and his father in Florida. That at the opening of the tobacco market in Fayetteville he saw E. G. Peoples but had no transaction with him except the following: He saw Peoples there and Peoples informed him that he had given a check to the Fayetteville Board of Trade and signed it Franklin Yancey by E. G. Peoples. The witness told Peoples that "he should know that the bank in Clarksville wouldn't accept a check signed by him with my name," but that he would lend him $75. In view of that he wrote out a check for $75 and may have given it to Mr. Perry to take up the check that Peoples had signed. He stopped the payment of that check because of information he had gotten that there was no Fayetteville Board of Trade. He did not know that he was liable for the payment of that check at the time and later he had offered to pay it but payment was refused. Witness stated that he had never seen Jim Riddle before the time they were in the recorder's *Page 317 
court; that he heard his testimony there regarding the alleged transaction on the 21st day of August. "Mr. Riddle said in the recorder's court that he had never met me, never seen me until that day in court."
Witness testified that he had never authorized anybody to give any checks on him. "I have never represented to Mr. Riddle or Mr. Bynum or Mr. Person or anybody else that E. G. Peoples had a right to give checks on me. I never received any tobacco that was purchased at the Cumberland County Warehouse and I have never received any that was purchased there. I do not know where E. G. Peoples is now. I last saw him the afternoon of the 20th of August in Lumberton at the Lorraine Hotel." On the morning of the 21st witness was in Lumberton. He went to see a doctor there and left around noon for Clarksville; that he did not stop in Fayetteville except to change buses and did not go to the warehouse district at all. The physician he saw in Lumberton was a Dr. Massey in Dr. McAlister's office; after that he was in bed until the 24th when he went to Watts Hospital in Durham. He was admitted to Watts Hospital on the 23rd of August and paid his bills on the 24th day of August. (Witness exhibited his hospital receipts.) The night of the 21st witness spent in his father's house in Clarksville.
Later witness found that drafts had been given signed by Franklin Yancey by E. G. Peoples. That was on the 25th or 26th of August; having been called by his local bank with regard to the check he declined to authorize the bank to pay it. At that time defendant testified, he had around $8,000 in the bank. He stated that E. G. Peoples had never bought any tobacco for him and that he had never received any tobacco purchased by him, nor had he received any proceeds of any tobacco bought by Peoples; that he had never at any time said anything to Mr. Perry about Peoples buying tobacco.
Again, at the conclusion of all the evidence, the defendant Yancey renewed his demurrer to the evidence and motion for judgment as of nonsuit, which was denied, and the defendant excepted.
There was a verdict of guilty and from the ensuing judgment thereupon, the defendant appealed, assigning errors.
A careful examination of the record fails to disclose any evidence that the defendant Yancey made to any of the partners, Person, Bynum or Riddle, the representation which is the gravamen of the indictment: That he had authorized his codefendant Peoples to buy tobacco for him, or for them jointly, and to draw drafts upon Yancey in payment therefor, or sign checks in his name. There is manifest not merely a *Page 318 
substantial variance between the allegation and the proof which, alone, would be fatal, but a failure of proof with respect to commission of the crime itself. S. v. Ridge, 125 N.C. 655, 34 S.E. 439.
The ratio procedendi of the prosecution suggests a departure from the original objective and an effort to convict the defendants of a conspiracy to defraud, or some unlabeled misconduct in connection with the transactions which seem to center around the activities of Peoples. The trial, therefore, took a wide range, the prosecution resorting freely to circumstantial evidence to prove the essential fact of the misrepresentation, — one which, if it existed at all, must necessarily, under the terms of the indictment, have been made in words, — suggestio falsi, rather than suppressio veri, if the latter, under any principle, may be applied in a criminal case under G.S., 14-100, without positive conduct of the accused equivalent to a naked lie. S. v.Matthews, 121 N.C. 604, 28 S.E. 469.
The nearest approach to proof by this method is in the evidence of J. M. Riddle. After stating that Yancey was present when Peoples signed the check in payment for the tobacco in Yancey's name, the witness qualified that statement by saying that "he had just come in or gone out" (of the office) or at least he was "right there close in the warehouse or office, one," and denied saying he was "right there," meaning the office. This testimony falls short of that necessary to impute to Yancey a knowledge of the act of Peoples, or of conduct on his part indicating its adoption as a fraudulent device. S. v. Baker, 199 N.C. 578, 155 S.E. 249.
Expressions like "they" — apparently involving Yancey in the purchase of the tobacco, were modified on cross-examination to mean Peoples or "Yancey or Peoples." There does not appear to have been made to this witness any representation of the kind charged in the indictment, and neither Person or Bynum have testified that any was made to him.
There could be no corroborating circumstances where there is nothing to corroborate.
There are a number of assignments of error with regard to the admission of evidence, some of which we find to be meritorious; but in view of the conclusion reached it is unnecessary to discuss them.
The demurrer to the evidence and motion for judgment of nonsuit should have been allowed, and the judgment to the contrary is
Reversed. *Page 319