STATE OF NORTH CAROLINA v. WILLIAM EDWARD MOORE

No. 803SC876

(Filed 3 March 1981)

1. Criminal Law § 91– speedy trial not denied

Defendant was not entitled to have his motion for a speedy trial granted where defendant was indicted on 27 August 1979; a new indictment for the same offenses was issued 7 January 1980; defendant filed a "motion for speedy trial dismissal" on 8 February 1980; defendant's trial commenced 10 April 1980; defendant had pled not guilty at his arraignment on the 27 August 1979 indictment and had not been brought to trial for the offenses charged so that the new indictment on 7 January 1980 was issued before entry of a plea of guilty or commencement of a trial; the original indictment was therefore superseded by the subsequent indictment charging defendant with the same offenses; and thus when defendant's dismissal motion was heard on 11 February 1980 and when his trial commenced on 10 April 1980, the 120 day limit imposed for commencement of trial by G.S. 15A-701(al)(1) had not expired.

2. Constitutional Law § 50– speedy trial – no denial of constitutional right

The trial court did not err in failing to dismiss charges against defendant for failure to grant him a speedy trial in violation of his constitutional rights, since defendant's trial commenced 30 days from the date of his indictment; even if the time was calculated from the original indictment against defendant, only 226 days elapsed from the date of indictment to the date trial commenced; defendant neither alleged nor offered evidence tending to prove that significant periods of delay were caused by neglect or willfulness on the part of the State; defendant failed to assert his constitutional right to a speedy trial until the day before his trial commenced; and defendant failed to demonstrate prejudice resulting from the delay.

3. Criminal Law § 34– other offenses – evidence improperly admitted

The trial court erred in admitting over defendant's objection evidence relating to his commission of other distinct, independent, or separate offenses, since the incriminating evidence against defendant consisted entirely of the testimony of three witnesses who admittedly participated with defendant in the offenses alleged; each witness testified to his extensive

criminal record and admittedly testified against defendant for the purpose of minimizing his own period of incarceration; and the effect of the improperly admitted evidence was to diminish defendant's credibility with the jury.

APPEAL by defendant from *Rouse, Judge.* Judgment entered 11 April 1980 in Superior Court, PITT County. Heard in the Court of Appeals 4 February 1981.

Defendant was convicted of felonious breaking or entering and felonious larceny. He appeals from a judgment of imprisonment.

*Attorney General Edmisten, by Associate Attorney General Lisa Shepherd for the State.*

*Donald C. Hicks III, for defendant appellant.*

WHICHARD, Judge.

[1] Defendant first contends the trial court erred in failing to dismiss the charges against him *with prejudice* for the State's failure to bring him to trial within the time limits sets forth in the Speedy Trial Act, G.S. 15A-701 *et seq.* Defendant was indicted on 27 August 1979. A new indictment for the same offenses was issued 7 January 1980. He filed a "motion for speedy trial dismissal" on 8 February 1980. A hearing was held on the motion before Judge James D. Llewellyn on 11 February 1980, at which Judge Llewellyn allowed the motion *without prejudice*. A new warrant for the same offense was then issued and executed by the arrest of defendant on 11 February 1980, the same date on which his motion to dismiss for failure to comply with the Speedy Trial Act was allowed without prejudice. A new indictment for the offense was issued on 10 March 1980. Defendant's trial commenced 10 April 1980, and judgment was entered 11 April 1980.

We do not reach the question of whether Judge Llewellyn erred in failing to grant defendant's motion *with prejudice*, for we find that defendant was not entitled to have the motion granted, with or without prejudice. The initial indictment against defendant, issued on 27 August 1979, charged that the alleged offenses occurred on or about 3 November 1978. A new indictment was issued on 7 January 1980 which charged that these offenses occurred "on or about the 29th or 30th day of November, 1978." All of the evidence was to the effect that the

offenses commenced on the night of 29 November and perhaps continued into the early morning of 30 November.

G.S. 15A-646, in pertinent part, provides:

If at any time before entry of a plea of guilty to an indictment or information, or commencement of a trial thereof, another indictment or information is filed in the same court charging the defendant with an offense charged or attempted to be charged in the first instrument, the first one is, with respect to the offense, superseded by the second and, upon the defendant's arraignment upon the second indictment or information, the count of the first instrument charging the offense must be dismissed by the superior court judge.

Defendant here had pled not guilty at his arraignment on the 27 August 1979 indictment. He had not been brought to trial for the offenses charged. Thus, the new indictment on 7 January 1980 was issued "before entry of a plea of guilty ... or commencement of a trial." By virtue of G.S. 15A-646, then, the original indictment of 27 August 1979 was superseded by the indictment of 7 January 1980 which charged the defendant with the same offenses "charged or attempted to be charged in the first instrument." Thus, both when defendant's motion was heard on 11 February 1980 and when his trial commenced on 10 April 1980, the 120 day limit imposed for commencement of trial by G.S. 15A-701(al)(1) had not expired.[1]

The State had valid reason to obtain a new indictment to allege correctly the date(s) on which the offenses charged occurred. The date(s) could have been critical to the State's capacity to prove its case if, for example, defendant had offered evidence tending to establish an alibi defense. The obtaining of a new

---

[1]G.S. 15A-701(al)(1) provides as follows:

Notwithstanding the provisions of G.S. 15A-701(a) the trial of a defendant charged with a criminal offense who is arrested, served with criminal process, waives an indictment or is indicted, on or after October 1, 1978, and before October 1, 1980, shall begin within the time limits specified below:

(1) Within 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last ....

Both indictments against defendant here came within the dates set forth in this provision.

indictment thus appears to have been both appropriate and in good faith. We recognize that the opportunity afforded the State by G.S. 15A-646 to obtain a new indictment which supersedes one previously issued could be exercised for the purpose of defeating the time limitations for commencement of trial imposed by the Speedy Trial Act. Concern regarding that possibility is, however, appropriately addressed to the General Assembly.

Our conclusion that defendant's motion should not have been granted in any event renders unnecessary consideration of his contention that the motion should have been granted with, rather than without, prejudice. We nevertheless offer the following observations for the guidance of bench and bar. G.S. 15A-703 provides that if a defendant is not brought to trial within the time limits imposed by G.S. 15A-701, "the charge shall be dismissed on motion of the defendant." It further provides:

> In determining whether to order the charge's dismissal with or without prejudice, the Court shall consider, among other matters, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; the impact of a re-prosecution on the administration of this Article and on the administration of justice.

G.S. 15A-703 (1978). The statute thus leaves in the discretion of the trial court the determination of whether dismissal should be with or without prejudice. It *mandates*, however, that the court consider *each* of the factors set forth in making that determination. Thus, failure to establish in the record that the court has considered each of these factors, and to establish its conclusions with regard to each, may leave the reviewing court no choice but to find an abuse of discretion. In *State v. Rogers*, 49 N.C. App. 337, 341, 271 S.E. 2d 535, 538 (1980), this Court suggested "that trial courts hereafter in determining exclusionary periods under the Speedy Trial Act detail for the record findings of fact and conclusions of law . . . ." We also suggest that trial courts detail for the record findings of fact and conclusions therefrom demonstrating compliance with the mandate of G.S. 15A-703 that the factors set forth therein be considered in determining whether motions to dismiss for non-compliance

with the Speedy Trial Act should be granted with or without prejudice.

[2] Defendant also contends the court erred in failing to dismiss the charges for failure to grant him a speedy trial in violation of his constitutional rights. He acknowledges in his brief that the "criteria for determining whether the right to a speedy trial has been denied and the approach to be followed were set out by the United States Supreme Court" in *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972). The Court there identified four factors to be assessed: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530, 33 L.Ed 2d at 117, 92 S.Ct. at 2192. It also stated:

> We regard none of the four factors . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Barker*, 407 U.S. at 533, 33 L.Ed. 2d at 118, 92 S.Ct. at 2193.

Here, as to the length of delay, defendant's trial commenced 30 days from the date of the 10 March 1980 indictment. Even if the time is calculated from the original 27 August 1979 indictment, however, only 226 days elapsed from the date of indictment to the date trial commenced. In *State v. Hartman*, 49 N.C. App. 83, 86, 270 S.E. 2d 609, 612 (1980) this Court found that "319 days is not a sufficient time, standing alone, to constitute unreasonable or prejudicial delay." *A fortiori*, a delay of 226 days, standing alone, does not constitute unreasonable or prejudicial delay. *See also State v. Setzer*, 21 N.C. App. 511, 204 S.E. 2d 921 (1974) (13 months held not unreasonable delay).

As to the reason for the delay, "[t]he burden is on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution." *State v. Johnson*, 275 N.C. 264, 269, 167 S.E. 2d 274, 278 (1969). Defendant here neither alleged nor offered evidence tending to prove that significant periods of delay were caused by "neglect or willfulness" on the part of the State. A portion of

the delay was due to the granting of a motion for continuance filed by defendant. On one occasion defendant failed to appear due to confusion as to whether his case was on the trial calendar. We find that defendant has failed to sustain the burden of establishing that the delay in commencement of his trial was due to "neglect or willfulness" on the part of the State.

As to defendant's assertion of his right, his motion to dismiss for violation of his constitutional right to a speedy trial was filed 9 April 1980, one day before his trial commenced. His 8 February 1980 motion to dismiss related solely to the State's failure to comply with the North Carolina Speedy Trial Act. It did not assert his constitutional right to a speedy trial. The United States Supreme Court noted in *Barker* that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532, 33 L.Ed. 2d at 118, 92 S.Ct. at 2193. Defendant's failure to assert the constitutional right here until the day before his trial commenced thus makes it difficult for him to prove that he was denied a speedy trial.

As to prejudice to the defendant, while his motion asserts prejudice in the preparation of his defense in that he "cannot locate witnesses" and "cannot remember his exact whereabouts at the time of the crime," defendant offered no evidence in support of the assertion. His attorney argued to the court the same assertions set forth in the motion. There was no evidence whatsoever, though, as to who the unlocateable witnesses were or what testimony they could offer on defendant's behalf. There was no evidence tending to establish what matters defendant could have produced in his defense but for the delay of which he complains. Defendant has thus failed to demonstrate prejudice resulting from the delay. He has failed to demonstrate that his "defense will be impaired." *Barker*, 407 U.S. at 532, 33 L.Ed. 2d at 118, 92 S.Ct. at 2193.

In summary, we find no basis for concluding that defendant was denied his constitutional right to a speedy trial.

[3] Defendant finally contends the court committed prejudicial error "in allowing the introduction of evidence regarding other crimes for which the defendant was not charged and for which he was not on trial." It has long been the general rule in this jurisdiction that "in a prosecution for a particular crime,

the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense." *State v. McClain,* 240 N.C. 171, 173, 81 S.E. 2d 364, 365 (1954). Justice Ervin set forth in *McClain* the following reasons for the rule:

> (1) "Logically, the commission of an independent offense is not proof in itself of the commission of another crime." [Citations ommitted.] (2) Evidence of the commission by the accused of crimes unconnected with that for which he is being tried, when offered by the State in chief, violates the rule which forbids the State initially to attack the character of the accused, and also the rule that bad character may not be proved by particular acts, and is, therefore, inadmissible for that purpose. [Citations omitted.] (3) "Proof that a defendant has been guilty of another crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged. Its effect is to predispose the mind of the juror to believe the prisoner guilty, and thus effectually to strip him of the presumption of innocence." [Citations omitted.] (4) "Furthermore, it is clear that evidence of other crimes compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the charge immediately before it. The rule may be said to be an application of the principle that the evidence must be confined to the point in issue in the case on trial."

*McClain,* 240 N.C. at 173-174, 81 S.E. 2d at 365-366. *See also,* 1 Stansbury's North Carolina Evidence § 111 at 339-340 (Brandis revision 1973), and cases cited.

The incriminating evidence against the defendant here consisted entirely of the testimony of three "canary bird" witnesses who admittedly had participated with defendant in the offenses alleged. Each of these witnesses testified to his own extensive criminal conduct. The witness Ronald Gene Britt testified:

> I basically work as a criminal. I engage in safecracking. It would be hard to say how many places I have broken into trying to find a safe. I don't know the approximate number but it would be quite a few.

.   .   .   .

... I have been convicted of other crimes ....

.   .   .   .

... I am one of the most professional safecrackers in
Eastern North Carolina. I don't have any idea about how
many safes that I have cracked open. In all my life it would
be a bunch, a whole lot.

Robert Britt testified:

I have been convicted of two breaking and entering
charges in Kinston, Lenoir County. I have been convicted
of receiving stolen goods and breaking and entering and
larceny in Duplin County and Little Washington. ... I have
several more charges that are pending here in Pitt County
and Craven County now. ... I would suppose that I have
committed in this spree of crimes, before I was caught, a
hundred or so, give or take a few. ... I know a good part of
where all the crimes are or places that I have broken into. I
don't know all of them. This is because there are too many
to remember.

A.B. Aldridge III testified that he and the other two witnesses
"used to ride all day looking places that we thought the safe was
in to go in and get — peel the safe off for what we could get."

Each of these witnesses was allowed to testify, over objec-
tion, to defendant's involvement with crimes other than the one
for which he was on trial. The witnesses Britt both testified
that defendant was involved with them in other breaking and
enterings in Rocky Mount and Kinston. The witness Aldridge
also testified to defendant's involvement in a breaking and
entering in Rocky Mount. The witness Robert Britt testified
that defendant "may have been or may not have been" involved
in still other breaking and entering offenses.

This testimony clearly violated the rule prohibiting intro-
duction of evidence tending to show that a defendant has com-
mitted other distinct, independent or separate offenses. It did
not fall within any of the "well recognized exceptions" to the
rule. See McClain, 240 N.C. at 174-176, 81 S.E. 2d at 366. Further,
defendant's credibility with the jury was the foundation of his
defense. The outcome of his trial hinged entirely on whether the

---

jury believed his testimony denying commission of the offenses or whether it believed the testimony to the contrary offered by three witnesses who admittedly possessed extensive criminal records and admittedly testified against defendant for the purpose of minimizing their own periods of incarceration. The effect of the improperly admitted evidence was to diminish defendant's credibility with the jury. In view of the extensive criminal records and the admitted motivation of the witnesses for the State, the diminution of defendant's credibility with the jury was inevitably prejudicial. Under these circumstances we find that defendant has sustained the burden of showing prejudice imposed on him by G.S. 15A-1443.

Because of the admission over defendant's objection of improper evidence relating to his commission of other distinct, independent, or separate offenses, defendant is entitled to a

New trial.

Judges WEBB and MARTIN (Harry C.) concur.