STATE OF NORTH CAROLINA v. BOBBY LEE MILLS

No. 486A82

(Filed 28 January 1983)

1. **Criminal Law § 91— speedy trial not denied—superseding indictment—120-day period began on day of new indictment**

When superseding indictments are appropriate and obtained in good faith, then for purposes of N.C.G.S. 15A-701(a1)(1), the 120-day period begins on the day the new indictments are returned. Therefore, where defendant pled not guilty to the charges in the original indictment; defendant had not been brought to trial before the day on which the new indictments were returned; the new indictments were appropriate and in good faith; and the new indictments charged defendant with the same crimes as were charged in the original indictments, there was no violation of the Speedy Trial Act where defendant was brought to trial within 120 days of the subsequent indictments. N.C.G.S. 15A-646.

2. **Constitutional Law § 30— failure to notify defendant before trial of existence of witness—failure to furnish defendant with copy of plea agreement pursuant to which witness testified—no error**

The trial court properly found that the State was not required to divulge to the defendant before trial the existence of a State's witness, a copy of the plea agreement pursuant to which the witness testified, or the substance of the witness's expected testimony where the witness was a prisoner in a cell adjoining one in which defendant and another inmate were incarcerated when he overheard defendant make certain statements to his cellmate concerning the three murders defendant was accused of committing. N.C.G.S. 15A-903(a)(2) requires the pretrial disclosure to defense counsel of a defendant's oral statements only when the statements were made to a person acting on behalf of the State.

Justice MITCHELL took no part in the consideration or decision of this case.

APPEAL by defendant from judgments of *Farmer, J.,* entered at the 8 March 1982 Criminal Session of Superior Court, WAKE County.

Defendant was charged in indictments proper in form with murder in the first degree of Michael Allen Collins, Grover Shepard Broadwell, and Della Francis Murray, and with conspiracy to commit murder in the first degree of Michael Allen Collins. Defendant entered a plea of not guilty to each charge.

The state's evidence tended to show the following:

In January of 1973, Grover Shepard Broadwell was employed by Joe R. Murray, Sr. to run a used car lot owned by Murray.

Michael Allen Collins and Della Francis Murray also worked at the used car lot. At approximately 9:30 a.m. on Monday, 15 January 1973, Joe Murray was informed that the used car lot was not open for business as it should have been. He and one of his salesmen went to the car lot to find out why. Finding nothing unusual, the two then went to Broadwell's apartment. Murray became suspicious and called the police when he and his salesman received no response to knocks at the door and found the bedroom window broken out.

When police officers were admitted to Broadwell's apartment by the resident manager, they found three bodies, later identified as Grover Shepard Broadwell, Michael Allen Collins, and Della Francis Murray. Broadwell's head and face were wrapped with 138 inches of two-inch-wide silver duct tape. His hands, neck, legs, and feet were bound by appliance cords, neckties, and another 190 inches of tape. His hat had been placed upon his taped head. Collins's body was bound and tied in a similar fashion, with 184 inches of tape around his head and face, 236 inches around his hands and wrists, and 92 inches around his legs. He was tied to a bed and to a doorknob by appliance cords tied around his neck. Murray's head was wrapped with 213 inches of tape, her wrists and hands were wrapped with 79 inches, and her legs with another 92 inches of tape. She was found facedown three feet from the door leading outside the apartment.

Autopsies revealed that the cause of death for each victim was a combination of external airway obstruction from the tape and strangulation from the cords and tape around the neck. A pathologist testified that he estimated that it took six to fifteen minutes for the victims to die.

The defendant was found guilty of three charges of murder in the first degree and one charge of conspiracy to commit murder. He was sentenced to three consecutive sentences of imprisonment for life.

*Rufus L. Edmisten, Attorney General, by Thomas F. Moffitt, Assistant Attorney General, for the State.*

*Tharrington, Smith & Hargrove, by Wade M. Smith, Roger W. Smith, and Douglas E. Kingsbery, for defendant.*

MARTIN, Justice.

[1] Defendant's first assignment of error alleges that he was prosecuted for the three murders in violation of the North Carolina Speedy Trial Act, N.C.G.S. §§ 15A-701 to -704 (1978 & Cum. Supp. 1981). For the reasons stated below, we hold that the Speedy Trial Act was not violated.

Defendant was originally indicted for the murders of Collins, Broadwell, and Murray on 27 April 1981. These indictments alleged that the murders occurred 15 January 1973. On 9 November 1981 the grand jury returned superseding indictments which alleged that the murders occurred on 11 January 1973, rather than on 15 January 1973. A motion filed by the defendant 4 December 1981 to dismiss the pending charges on the basis of a violation of the North Carolina Speedy Trial Act was denied. Defendant's trial on the murder charges began 8 March 1982.

In pertinent part, the Speedy Trial Act states:

[T]he trial of a defendant charged with a criminal offense who is arrested, served with criminal process, waives an indictment or is indicted, on or after October 1, 1978, and before October 1, 1983, shall begin within the time limits specified below:

(1) Within 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last.

N.C. Gen. Stat. § 15A-701(a1)(1) (Cum. Supp. 1981). Defendant argues that the speedy trial clock began to run on 27 April 1981, the date of the original indictments charging him with commission of the murders. Therefore, since more than 120 days (excluding those not counted under N.C.G.S. 15A-701(b)) had elapsed by 8 March 1982, the date on which he was brought to trial, he was tried in violation of the Speedy Trial Act. The defendant urges us to overrule the decision of the Court of Appeals of North Carolina in *State v. Moore*, 51 N.C. App. 26, 275 S.E. 2d 257 (1981), which held that when a superseding indictment is appropriate and obtained in good faith, the 120-day period begins on the date the new indictment is returned. In the present case, trial commenced within 120 nonexcludable days of the date on which superseding indictments were returned.

We find the reasoning in *Moore* persuasive and hold that when superseding indictments are appropriate and obtained in good faith, then for purposes of N.C.G.S. 15A-701(a1)(1) the 120-day period begins on the day the new indictments are returned.

In the instant case the state had a valid reason for obtaining new indictments which alleged correctly the date on which the three murders were committed: the date could have been critical to the state's ability to prove that the defendant was guilty if the defendant ultimately chose to offer evidence at trial intended to establish an alibi defense. It was also relevant to ensure protection of the defendant from double jeopardy. The obtaining of new indictments was thus appropriate and in good faith.

As the *Moore* court observed, N.C.G.S. 15A-646 states in part:

> If at any time before entry of a plea of guilty to an indictment or information, or commencement of a trial thereof, another indictment or information is filed in the same court charging the defendant with an offense charged or attempted to be charged in the first instrument, the first one is, with respect to the offense, superseded by the second and, upon the defendant's arraignment upon the second indictment or information, the count of the first instrument charging the offense must be dismissed by the superior court judge.

Defendant here pled not guilty to the charges in the original indictments. He had not been brought to trial before 9 November 1981, the day on which the new indictments were returned. Therefore, the second indictments were issued "before entry of a plea of guilty . . . or commencement of a trial." Thus, because the new indictments charged defendant with the same crimes as were charged in the original indictments, the new indictments superseded the earlier ones. For purposes of N.C.G.S. 15A-701(a1)(1), 9 November 1981 was the day on which the last of the following occurred: arrest, service of criminal process, waiver of indictment, or indictment. Because defendant was brought to trial within 120 days of this date, N.C.G.S. 15A-701(a1)(1) was not violated. We concur with the *Moore* court

> that the opportunity afforded the State by G.S. 15A-646 to obtain a new indictment which supersedes one previously

issued could be exercised for the purpose of defeating the time limitations for commencement of trial imposed by the Speedy Trial Act. Concern regarding that possibility is, however, appropriately addressed to the General Assembly.

51 N.C. App. at 29, 275 S.E. 2d at 260. Meanwhile, defendants are protected by the requirement that in order for the 120-day period to begin on the date superseding indictments are returned, such indictments must have been appropriate and sought in good faith.

[2] Defendant next assigns as error the trial court's denial of his motion to suppress the testimony of a particular witness. Grounds for the motion were that the state had failed to notify defendant before trial of the existence of the witness, had failed to furnish defendant before trial with a copy of the plea agreement pursuant to which the witness testified, and had failed to tell defendant the substance of oral statements that defendant had made and which were the subject of the witness's testimony. Defendant claims that the trial court violated N.C.G.S. 15A-903(a)(2), which reads as follows:

(a) Statement of Defendant.—Upon motion of a defendant, the court must order the prosecutor:

. . . .

(2) To divulge, in written or recorded form, the substance of any oral statement made by the defendant which the State intends to offer in evidence at the trial.

In the present case the witness was a prisoner in a cell adjoining one in which defendant and another inmate were incarcerated when he overheard defendant make certain statements to his cellmate concerning the three murders. The witness contacted his lawyer and later offered to testify against defendant in exchange for certain promises of the prosecuting attorney relevant to the witness's conditions of imprisonment. The agreement containing the resulting bargain was not signed until moments before the witness took the stand. It was not until then that the state made the decision to call the witness to testify.

Defendant urges this Court to overrule a line of cases holding that N.C.G.S. 15A-903(a)(2) requires the pretrial disclosure to defense counsel of a defendant's oral statements only when the

statements were made to a person acting on behalf of the state. *State v. Moore*, 301 N.C. 262, 271 S.E. 2d 242 (1980); *State v. Detter*, 298 N.C. 604, 260 S.E. 2d 567 (1979); *State v. Crews*, 296 N.C. 607, 252 S.E. 2d 745 (1979). The witness here complained of was not a person acting on behalf of the state at the time he heard defendant's conversations, nor were the statements he overheard even addressed to him. There is no evidence in the record that the state knew of the contents of these conversations until after Mills made the last statements that the witness heard. Thus, under the *Moore, Detter,* and *Crews* line of cases the state was not required to divulge to defendant the substance of the witness's expected testimony before trial.

We think the interpretation of N.C.G.S. 15A-903(a)(2) enunciated in *Moore, Detter,* and *Crews* is sound, and decline defendant's invitation to change it. As Copeland, J., stated in *Crews:*

According to the official commentary accompanying it, Article 48 of the North Carolina General Statutes, dealing with pretrial discovery, was modeled after a draft of proposed amendments to Rule 16 of the Federal Rules of Criminal Procedure. *See also State v. Hardy,* 293 N.C. 105, 235 S.E. 2d 828 (1977). Federal Rule 16(a)(1)(A) expressly deals with this problem by stipulating that a defendant may discover "the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest *in response to interrogation by any person then known to the defendant to be a government agent.*" (Emphasis added.) Although G.S. 15A-903(a)(2) does not include the language in Federal Rule 16(a)(1)(A) emphasized above, we find the intent of the Legislature was to restrict a defendant's discovery of his oral statements to those made by him to persons acting on behalf of the State.

The official commentary to G.S. 15A-903 relates that a provision requiring disclosure to a defendant of the names and addresses of witnesses to be called by the State was omitted from Article 48 because the witnesses may be subject to "harassment or intimidation." We agree with the opinion of the Attorney General that "[i]t would be illogical to assume the Act intended to require discovery of remarks of

the defendant to bystander witnesses but not disclosure of the witnesses' names." 45 N.C.A.G. 60 (1975). "Where possible, the language of a statute will be interpreted so as to avoid an absurd consequence." *State v. Hart*, 287 N.C. 76, 80, 213 S.E. 2d 291, 295 (1975). Furthermore, it is anomalous to think the Legislature granted a defendant indirect access to the names of the State's witnesses when it denied his right to this information directly.

296 N.C. at 619-20, 252 S.E. 2d at 753-54 (footnote omitted).

We note that when the witness to whose testimony defendant objects took the stand, defendant did not move for a continuance or recess for the purpose of preparing cross-examination. However, at the close of direct examination of the witness, the court adjourned until the next day, thus allowing defense counsel additional time for further preparation of cross-examination. Moreover, nothing in the record before this Court shows that the state was aware of the contents of the witness's testimony until the witness was questioned at trial. Finally, as soon as the state procured the necessary signatures on the agreement pursuant to which the witness testified, the prosecuting attorney notified defense counsel that the witness would be called. Until that time the state did not know whether the witness would be called to testify. The trial judge did not err in denying defendant's motion to suppress the testimony of the witness.

We do not deem it necessary to further discuss defendant's argument that his motions to dismiss should have been allowed. The record contains substantial competent evidence to support the verdicts returned by the jury. *State v. Jolly*, 297 N.C. 121, 254 S.E. 2d 1 (1979); *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977); *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956). The motions to dismiss were properly denied.

Defendant received a fair trial, free of prejudicial error.

No error.

Justice MITCHELL took no part in the consideration or decision of this case.