STATE OF NORTH CAROLINA v. DONALD ABERNATHY FREEMAN

No. 623PA82

(Filed 31 May 1983)

1. **Criminal Law § 91— Speedy Trial Act—actions in different prosecutorial districts—not one common scheme or plan**

    Where criminal actions occur in different prosecutorial districts, they cannot be considered as one common scheme or plan under the Speedy Trial Act.

2. **Criminal Law § 91— Speedy Trial Act—superseding indictments—good faith**

    The State appropriately and in good faith obtained superseding indictments pursuant to G.S. 15A-646, and the 120-day statutory speedy trial period thus began on the day the new indictments were returned, where defendant was indicted on 17 November 1980 on three charges of conspiracy to obtain money by false pretense; these three charges were voluntarily dismissed on 5 May 1981; defendant was indicted on 23 March 1981 on one charge of conspiracy to commit false pretense and three counts of aiding and abetting in obtaining money by false pretense; the dates of the alleged conspiracy were changed in the new indictment, and it appears that by obtaining a superseding indictment on the conspiracy charge, the State was acting on additional information and attempting to protect its interests in proving defendant's guilt; the three 23 March indictments alleging the separate crime of aiding and abetting represented the result of additional information leading to new and more specific charges; and there was no evidence that the State sought to obtain the 23 March indictments merely to avoid the time limitations of the Speedy Trial Act. G.S. 15A-701(a1)(3).

3. **False Pretense § 2.1— fictitious business—worthless checks—aiding and abetting in obtaining money by false pretense**

    Defendant was properly indicted and convicted under G.S. 14-100 for aiding and abetting in obtaining money by false pretense where the evidence tended to show that defendant was instrumental in creating a fictitional business with an account at a reputable bank for the sole purpose of inducing merchants to cash worthless checks purportedly issued to employees of the business; defendant furnished a worthless check drawn on the business account to a payee who was permitted to cash the check at a supermarket; and the payee knew at the time that the business was not legitimate, that it had been set up by defendant, and that it existed for the purpose of inducing merchants to cash worthless checks.

4. **Criminal Law § 146.1— scope of review of Court of Appeals' decision**

    Pursuant to App. Rule 16, the scope of review of decisions of the Court of Appeals is limited to those issues properly presented for review to that Court.

5. **Criminal Law § 13— right to try person brought within jurisdiction illegally**

    The fact that a person accused of a crime is improperly or illegally brought to this State after being apprehended in another jurisdiction does not affect the right of the State to try and imprison him for the crime.

**6. False Pretense § 1; Forgery § 1— false pretense—uttering worthless checks not lesser included offense**

 The crime of uttering worthless checks is not a lesser included offense of obtaining property under false pretense. Therefore, in a prosecution for aiding and abetting in obtaining money by false pretense, the trial court did not err in failing to instruct the jury concerning the crime of uttering worthless checks.

THE State of North Carolina appeals from a decision of the Court of Appeals filed on 5 October 1982 reversing defendant's conviction for aiding and abetting in obtaining property by false pretense in violation of G.S. § 14-100, and remanding the cause for a determinaion of whether the case should be dismissed with or without prejudice. The judgment was entered by *Snepp, J.,* at the 29 June 1981 Session of Superior Court, MECKLENBURG County. We granted the State's petition for discretionary review on 11 January 1983. On the same day we allowed defendant's petition for discretionary review of that portion of the Court of Appeals' opinion finding no error in the trial court's denial of defendant's motion to dismiss.

The appeal concerns, *inter alia,* the application of the Speedy Trial Act to charges pending in two prosecutorial districts. Facts pertinent to the case are as follows:

LINCOLN COUNTY INDICTMENTS

On 20 October 1980 defendant was indicted in Lincoln County on three counts of obtaining money by false pretense from Food World, Inc. on 30 November 1979, Triangle Mini Mart, Inc. on 28 November 1979, and Ben Franklin Store Company on 28 November 1979 by presenting checks to those businesses drawn on a purported account of Budget Merchandise and Financing at City National Bank in Charlotte and made payable to the defendant. The defendant represented to those businesses that the checks were his payroll checks from Budget Merchandise and Financing. The indictments further alleged that in truth and in fact the defendant knew at the time of presenting the checks that they were not valid and negotiable; that they were not valid payroll checks; that the Budget Merchandise and Financing account with the City National Bank of Charlotte was opened on 5 November 1979 and was closed on 16 November 1979, and that Budget Merchandise and Financing was not in business at the address represented.

On 23 December 1980 the three Lincoln County indictments were dismissed inasmuch as the defendant was to be tried in Mecklenburg County "on related charges."

### MECKLENBURG COUNTY INDICTMENTS

On 17 November 1980, prior to the dismissal of the Lincoln County indictments, defendant was indicted in Mecklenburg County on three separate charges of *conspiracy* to obtain money by false pretense.

On 23 March 1981 defendant was indicted in Mecklenburg County on three counts of *aiding and abetting* in obtaining property by false pretense. Indictment 81CR019807 alleged as follows:

> that on or about the 9th day of November, 1979, in Mecklenburg County, Donald Abernathy Freeman, did unlawfully, wilfully and feloniously aid and abet Harry Lee Gaston in obtaining unlawfully, wilfully, feloniously, knowingly, and designedly, with the intent to cheat and defraud, $150.00 in currency and goods from Harris-Teeter Supermarkets, Inc., a corporation, doing business in North Carolina, without making proper compensation or bona fide arrangements for compensation. The property was obtained by means of Harry Lee Gaston, who represented himself to be an employee of Budget Merchandise and Financing Company, presenting to Harris-Teeter Supermarkets, Inc., for payment for goods and for cashing check number 315, drawn to Harry Lee Gaston, on the account of Budget Merchandise and Financing Company, which appeared to be a legitimate business, when in fact Harry Lee Gaston knew at the time he presented the check that Budget Merchandise and Financing Company was not a legitimate business, but rather had been created by Donald Abernathy Freeman and was existing for the sole purpse of inducing merchants to cash worthless checks which appeared to be checks from a legitimate business, presented by people who appeared to be employees of the business. The pretense made was calculated to deceive and did deceive.

The other two indictments were substantially similar, alleging that on the same date Gaston presented check number 328 in the amount of $110.00 and check number 317 in the amount of $80.00 to Harris-Teeter. Defendant was also indicted on 23 March on one

count of conspiracy to commit false pretense. The indictment alleged

> that on or about the 5th day of November, 1979, and continuing thereafter up through and including the 12th day of February, 1981, in Mecklenburg County, and elsewhere within the state of North Carolina, at places known and unknown to the Grand Jury of Mecklenburg County, Donald Abernathy Freeman, did unlawfully, wilfully and feloniously with common design and set purpose, agree, plan, combine, conspire, and confederate each with the other, with Robert Junior Winchester, William Henry Cloud, Carol Laney, Harry Lee Gaston, Johnny Lee Mumford, Jr., and divers others to commit the felony of false pretense by presenting to various commercial establishments including Harris-Teeter Supermarkets, Inc., Atlantic and Pacific Tea Company, Inc., Winn Dixie, Inc., The Kroger Company, a corporation, doing business as Kroger Sav-On, Woolworth/Woolco, Inc., corporations doing business in North Carolina, checks which appeared to be valid checks drawn on the account of a p[ur]portedly legitimate business, Budget Merchandise and Financing Company, thereby inducing the commercial establishments to cash these checks when in fact there was no such legitimate business and there were no funds in any account to cover the checks presented. This pretense made was calculated to deceive and did deceive.

On 5 May 1981 the prosecutor entered voluntary dismissals on the Mecklenburg County indictments of 17 November 1980.

### EVIDENCE

At trial, the State's evidence tended to show that on 5 November 1979, the defendant opened an account at the City National Bank in Charlotte in the name of Budget Merchandise and Financing. He presented identification (a South Carolina driver's license) and a document from the Register of Deeds registering the company in Mecklenburg County. He deposited $75.00 in cash. Defendant represented that his business was to finance "general and special merchandise." He ordered 300 checks. Later that month defendant brought Carol Laney to the bank to sign a signature card on the account. There was evidence that the address given by the defendant as that of his business, 704 East 36th

Street, Charlotte, was in fact the address of a rooming house that had burned in June 1979 and had been condemned in October 1979. Defendant lived next door. Harry Lee Gaston testified that in September 1979 defendant approached him about making "some quick and easy money." Defendant told Gaston that Budget Merchandise and Financing Company did not exist but they "would just be cashing checks." Gaston would cash the checks at various business establishments. Defendant would receive sixty percent of the face value of the checks and Gaston would take forty percent of the purchases. Defendant provided Gaston with identification. According to Gaston, he, the defendant, and others, including William Cloud, "would go about cashing the checks at that time by all of us meeting at a certain location. Mr. Freeman would pass the checks out to us and then we would all get in his automobile and he would point out the various stores to go to. He would wait outside until we came back out of the store."

Donald Allen, a special agent for the State Bureau of Investigation, testified that he took defendant into custody in Suffolk, Virginia, advised him of his rights, and returned defendant to North Carolina. S.B.I. Agent Allen further testified that:

On this day, the first of October, 1980, in route back to Lincoln County we had a conversation at which time he advised that he [had] been the president of Budget Merchandise and Financing Company. He said that he had set the company up. We had a discussion about the legalities involved and the charges against him at which time he stated that he was not contesting the facts and the cases against him in North Carolina but rather he was contesting the constitutionality of the North Carolina General Statute 14-100 which is the false pretense law. He acknowledged that he had written numerous Budget Merchandise and Financing checks in North Carolina and Lincoln County. There were not forgeries involved. That there was a person named Carol Laney who had signed some of the checks in addition to him. He did state that some of the checks with her signature on them he was not familiar with and did not know who cashed them. He further related that Virginia authorities had held him and in his opinion illegally because he had filed a writ of habeas corpus which he stated had never been heard in Court. He told me further that he had never committed any bad crime such as

burglary or larcenies of people's things or never hurt anyone and that with reference to the checks he stated he felt the big stores could afford the losses and no one was really hurt from cashing the checks at these types of places. He told me that Budget Merchandise and Financing Company was a business deal that went sour because he tried to help some unfortunate friends out and it ended up getting him in trouble. He said that he had told a Carol Ann Sadler and a Luther Gamble not to go to Gastonia and cash any checks in that area and that they went anyway and got caught. He said that his intentions in opening up Budget Merchandise and Financing account was to raise money to go to Wilmington and open a legitimate business there in which he would be selling books and appliances. He said several people went with him to the Wilmington area.

Based on the 23 March 1981 indictments, defendant was tried and convicted on 1 July 1981 of one count of *aiding and abetting* in obtaining property by false pretense. On appeal to the Court of Appeals, that court reversed, finding that the State had failed to comply with the North Carolina Speedy Trial Act, G.S. § 15A-701(a1). The court rejected defendant's argument that under the evidence he could not be prosecuted under the false pretense statute when other statutes, specifically G.S. § 14-106 (obtaining property in return for worthless check, draft or order) or G.S. § 14-107 (worthless check) more specifically fitted the alleged activities.

*Rufus L. Edmisten, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the State.*

*Donald Abernathy Freeman, for himself as defendant-appellant.*

MEYER, Justice.

### STATE'S APPEAL

The State contends that the Court of Appeals erred in holding that the State failed to comply with the Speedy Trial Act. G.S. § 15A-701(a1)(3) provides in pertinent part:

(a1) Notwithstanding the provisions of subsection (a) the trial of a defendant charged with a criminal offense who is ar-

rested, served with criminal process, waives an indictment or is indicted, on or after October 1, 1978, and before October 1, 1983, shall begin within the time limits specified below:

. . . .

(3) When a charge is dismissed, other than under G.S. 15A-703 or a finding of no probable cause pursuant to G.S. 15A-612, and the defendant is afterwards charged with the same offense or an offense based on the same act or transaction or on the same series of acts or transactions connected together or constituting parts of a single scheme or plan, then within 120 days from the date that the defendant was arrested, served with criminal process, waived an indictment, or was indicted, whichever occurs last, for the original charge; . . . .

In its opinion, the Court of Appeals concluded that:

We believe the false pretense for which the defendant was charged in Lincoln County and the aiding and abetting false pretense for which the defendant was convicted in Mecklenburg County were part of the same scheme or plan. *See State v. Bracey*, 303 N.C. 112, 277 S.E. 2d 390 (1981). The Lincoln County charges were not dismissed under G.S. 15A-703 or on a finding of no probable cause. The trial in Mecklenburg County was not held within 120 days of the indictment in Lincoln County which delay violated the provisions of G.S. 15A-701(a1). *See State v. Norwood*, --- N.C. App. ---, 291 S.E. 2d 835 (1982); *State v. Walden*, 53 N.C. App. 196, 280 S.E. 2d 505 (1981); and *State v. Dunbar*, 47 N.C. App. 623, 267 S.E. 2d 577 (1980).

*State v. Freeman*, 59 N.C. App. 84, 86, 295 S.E. 2d 619, 620-21 (1982).

[1]    In so holding, the Court of Appeals erred. Where criminal actions occur in different prosecutorial districts,[1] they cannot be considered as one common scheme or plan under the Speedy Trial Act. We cannot ascribe a legislative intent that would so drastically hinder respective district attorneys in performing the duties of their offices. To hold otherwise would allow the dismissal of a case in one district as a result of actions by a

---

1. Lincoln County is in District 27-B; Mecklenburg County is in District 26.

district attorney in another district without the knowledge or consent of the district attorney in the affected district. The law does not contemplate such a bizarre result.

[2] Defendant was tried and convicted under a 23 March Mecklenburg County indictment of *aiding and abetting* in obtaining money by false pretense. Although defendant was earlier indicted in Mecklenburg County on 17 November on conspiracy to commit false pretense, these indictments were not dismissed until 4 May. G.S. § 15A-701(al)(3) is applicable only after charges are dismissed and the defendant is later charged with the same or similar offense. *See State v. Dunbar*, 47 N.C. App. 623, 267 S.E. 2d 577 (1980). 17 Wake Forest Law Review 173, 185 (1981). Thus, the issue in the present case is whether the State appropriately and in good faith obtained superseding indictments pursuant to G.S. § 15A-646. We recently addressed this issue in *State v. Mills*, 307 N.C. 504, 299 S.E. 2d 203 (1983), and held that where the State has a valid reason for obtaining new indictments, the 120-day period begins on the date the superseding indictments are returned. Here, the Record discloses that, at least with respect to the three 17 November *conspiracy* indictments and the one 23 March *conspiracy* indictment, the State properly obtained the superseding indictment. The 17 November indictments alleged that on or about 9 November, 12 November and 15 November 1979, defendant conspired with others to obtain money by false pretense. The 23 March 1981 indictment alleged that on or about 5 November 1979 and continuing through 12 February 1981, defendant conspired to obtain money and goods by false pretense. As we stated in *Mills*, the dates "could have been critical to the state's ability to prove that the defendant was guilty if the defendant ultimately chose to offer evidence at trial intended to establish an alibi defense." *Id.* at 507, 299 S.E. 2d at 205. In fact, we held in *State v. Christopher*, 307 N.C. 645, 300 S.E. 2d 381 (1983), that a variance between the date alleged in the indictment and the date shown by the evidence at trial prejudiced defendant's ability to present an alibi defense to a charge of conspiracy. We of course recognize that the defendant in the present case was not tried or convicted on the charge of conspiracy. Nevertheless, it appears that by obtaining a superseding indictment on the conspiracy charge, the State was acting on additional

information and attempting to protect its interests in proving defendant's guilt.

Likewise, the three 23 March indictments alleging the separate crime of *aiding and abetting* simply represent the result of additional information leading to new and more specific charges.[2] In *Mills* we recognized that although G.S. § 15A-646, which affords the State the opportunity to obtain a superseding indictment, *could* be misused by the State for the purposes of defeating the time limitations under the Speedy Trial Act, the good faith requirement enunciated in *Mills* affords adequate protection against such abuse.

On the Record before us there is no evidence that the State sought to obtain the 23 March indictments merely to avoid the time limitations of the Speedy Trial Act. At the time the 23 March indictments were obtained, there remained twenty-five days within which the State could have brought defendant to trial under the 17 November 1980 indictments (excluding the period from 21 November, when defendant was served with these indictments, to 19 December, on motions for continuance). In fact, the 23 March case was first calendared for trial on 21 April 1981 at which time defendant moved to dismiss the 17 November indictments and the 23 March superseding indictments. We therefore hold that for purposes of the Speedy Trial Act, 23 March 1981 is the controlling date. As defendant was brought to trial on 29 June 1981, well within the 120-day time limitation, *no violation occurred.* We reverse the Court of Appeals on this issue.

_____

2. On 25 August 1980, on a plea of guilty to four counts of false pretense, prayer for judgment was continued until 15 December 1980 or "until such time as all cases relating to the investigation of Budget Merchandise & Financing Co. of Charlotte, N. C., said investigation being conducted statewide by the State Bureau of Investigation, are resolved." Defendant agreed to co-operate with law enforcement authorities in their investigation and to give truthful testimony. It appears, then, that investigation into defendant's activities was ongoing. An official of the City National Bank testified that 214 checks were written on the Budget Merchandise account totaling $24,437.00. We also note that defendant began by presenting checks himself. Later he solicited the help of others. In short, considering the scope of defendant's operation, the number of checks and individuals involved, and the extent of the investigation, we believe the State acted as promptly as possible in defining the charges and bringing defendant to trial.

DEFENDANT'S APPEAL

[3]　Defendant first contends that the trial court erred in denying his Motion to Dismiss the charge of false pretense, G.S. § 14-100, where the evidence showed only a violation of G.S. § 14-106 or § 14-107, uttering worthless checks. We disagree.

G.S. § 14-100 provides in pertinent part:

> (a) If any person shall knowingly and designedly by means of any kind of false pretense whatsoever, whether the false pretense is of a past or subsisting fact or of a future fulfillment or event, obtain or attempt to obtain from any person within this State any money, goods, property, services, chose in action, or other thing of value with intent to cheat or defraud any person of such money, goods, property, services, chose in action or other thing of value, such person shall be guilty of a felony, . . . .

In *State v. Cronin*, 299 N.C. 229, 242, 262 S.E. 2d 277, 286 (1980), we held that

> the crime of obtaining property by false pretenses pursuant to G.S. 14-100 should be defined as follows: (1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another.

In the present case, defendant aided and abetted in falsely representing to Harris-Teeter Supermarkets, Inc. that Harry Gaston was an employee of Budget Merchandise and Financing Company, which was made to appear a legitimate business, and in that capacity Gaston was permitted to cash a check drawn on the Budget account. Gaston knew at the time that Budget Merchandise and Financing was not a legitimate business; that it had in fact been set up by the defendant; and that the business existed for the sole purpose of inducing merchants to cash worthless checks. "The pretense was," in the words of the indictment, "calculated to deceive and did deceive."

In *State v. Clontz*, 4 N.C. App. 667, 167 S.E. 2d 520 (1960), the Court of Appeals affirmed defendant's conviction of obtaining property by means of false pretense where defendant represented

himself to a salesman as Thomas E. Crabtree and based on that representation was permitted to cash a check for the purchase of paint and related material. Likewise, defendant in the case sub judice did more than aid or abet in presenting a worthless check. He was instrumental in creating a fictional business, the purpose of which was to belie unwary merchants into believing that the payroll checks drawn on that business, with an account at a reputable bank, were guaranteed. "[T]he crime of obtaining property by means of a false pretense may be committed when one obtains goods . . . by a wilful misrepresentation of his identity . . .," because "[t]he decision of a merchant to extend credit ordinarily turns upon his evaluation of the financial status and history of the applicant." *State v. Tesenair*, 35 N.C. App. 531, 535, 241 S.E. 2d 877, 880 (1978). In *Tesenair*, defendant introduced himself as Boyce Tesenair and, after checking, the merchant learned from the Credit Bureau that Tesenair had a good credit rating. Based on this information, the merchant permitted defendant to purchase paint and supplies on credit. Defendant argued that the evidence showed nothing more than his failure to fulfill a promise to pay in the future. In responding, the Court of Appeals wrote that defendant's arguments overlooked

> the significance of the evidence that defendant obtained goods on credit by a deliberate misrepresentation of his identity. The crime of obtaining property by means of a false pretense is committed when one obtains a loan of money by falsely representing the nature of the security given. *State v. Roberts*, 189 N.C. 93, 126 S.E. 161 (1925), or by falsely representing that the property pledged as security is free from liens. *State v. Howley*, 220 N.C. 113, 16 S.E. 2d 705 (1941); *See* Annot., 24 A.L.R. 397 (1923), *supplemented in* 52 A.L.R. 1167 (1928).

*Id.* at 535, 241 S.E. 2d at 879-80.

A defendant may obtain money or property by falsely representing his own identity (which defendant's cohorts effectively did as purported employees of Budget Merchandise and Financing Company) or he may do so by creating the identity of a "business" calculated to engender confidence in the inherent worth of the check. The fact remains that behind the mere writing of a worthless check lies a cleverly devised plan to deceive.

This is the very essence of a false pretense—to obtain or attempt to obtain a thing of value with the intent to cheat or defraud. We therefore hold that the indictment was carefully and lawfully styled and defendant was properly convicted of the crime charged.

[4]  In his new brief,[3] defendant raises numerous assignments of error which were neither presented nor argued before the Court of Appeals. Pursuant to Rule 16 of the North Carolina Rules of Appellate Procedure, the scope of review of decisions of the Court of Appeals is limited to those issues properly presented for review to that court. Thus, the questions defendant attempts to present are not properly before us. *See State v. Hurst*, 304 N.C. 709, 285 S.E. 2d 808 (1982). We have, nevertheless, reviewed these questions and find them to be without merit.

The issues deal substantially with the following: the extradition process; the trial court's failure to instruct on a worthless check crime; the failure of the indictment to allege a crime; probable cause for arrest and detention; the prosecutor's discretion to impanel a grand jury to consider a crime defined by G.S. § 14-100; the constitutionality of G.S. § 14-100 as it relates to commercial paper; the repeal of G.S. § 14-100 and G.S. § 14-106; the exclusive application of G.S. § 14-107 to crimes involving worthless checks; the lack of a prima facie case under G.S. § 14-107.1; failure to toll the Statute of Limitations as to both G.S. § 14-106 and G.S. § 14-107; the lawfulness of defendant's arrest, detention, indictment, process, imprisonment, and extradition when predicated upon a violation of G.S. § 14-100; and, suppression of evidence as fruit of the poisonous tree. Most of these issues are resolved by our holding today that defendant was properly charged and convicted under G.S. § 14-100. The questions of extradition and jury instruction deserve separate consideration.

[5]  Defendant contends that he was denied due process of law in that he was given no opportunity to be heard prior to his extradition from the State of Virginia; that the matter of his petition for a writ of habeas corpus was unresolved prior to his extradition; and that he was extradicted for acts proscribed by a repealed or unlawful statute, namely G.S. 14-100. He further contends that

---

3. Appellant's brief is from his own pen.

the seizure of his person was in violation of the fourth amendment and that the trial court lacked jurisdiction over him. "Even if the defendant was improperly or illegally brought to North Carolina after being apprehended in Virginia, this would not affect the right of the State of North Carolina to try him and imprison him on the felony charges. . . ." *State v. Green*, 2 N.C. App. 391, 393, 163 S.E. 2d 14, 16 (1968); *State v. Smith*, 33 N.C. App. 511, 235 S.E. 2d 860, *appeal dismissed* 293 N.C. 364 (1977), *cert. denied* 434 U.S. 1076 (1978).

[6]   The defendant requested that the trial court charge the jury on the crime of uttering worthless checks. The trial court did not so charge the jury. Defendant first contends that the jury could find no crime because conviction was impossible under G.S. § 14-100 and because the jury was not instructed on the crime of uttering worthless checks. In the alternative, he contends that the trial court erred in failing to charge on the crime of uttering worthless checks. Defendant admits, and we agree, that the crime of uttering worthless checks is not a lesser included offense of obtaining property under false pretense. *See State v. Weaver*, 306 N.C. 629, 295 S.E. 2d 375 (1982) (detailing the standard in determining lesser included offenses). Therefore, the trial court did not err in failing to instruct the jury concerning the crime of uttering worthless checks. There was ample evidence for the jury to find the crime of aiding and abetting the obtaining of property under false pretense.

We affirm that part of the Court of Appeals' opinion finding no error in the trial court's failure to dismiss the indictment under G.S. § 14-100.

For error in reversing the trial court and remanding for a determination as to dismissal with or without prejudice, the decision of the Court of Appeals is reversed. The cause is remanded to the Court of Appeals for reinstatement of the judgment of the trial court.

Reversed and remanded.