STATE OF NORTH CAROLINA v. BARRY LEE LINKER

No. 156PA83

(Filed 3 November 1983)

**Indictment and Warrant § 17.5— fatal variance between indictment and proof**

> In a prosecution for attempting to obtain property by false pretenses pursuant to G.S. 14-100(a), there was fatal variance between the allegations in the indictment and the proof at trial where the indictments alleged that defendant "represented himself as Barry W. Linker," and the record clearly reflected that the State failed to prove that defendant represented himself as Barry W. Linker.

ON discretionary review of the Court of Appeals' unpublished decision finding no error in defendant's convictions for obtaining property by false pretenses in the Superior Court for MECKLEN-BURG County.

*Rufus L. Edmisten, Attorney General, by Fred R. Gamin, Assistant Attorney General, for the State.*

*David P. Hefferon, Assistant Public Defender, and Purser and Hefferon by Thomas J. Hefferon for defendant appellant.*

EXUM, Justice.

Defendant, Barry Lee Linker, was charged in two proper indictments with obtaining and attempting to obtain property by false pretenses from the Wachovia Bank and Trust Company. *See* N.C. Gen. Stat. § 14-100(a) (1981) (making it an offense to obtain property "by means of any kind of false pretense whatsoever . . ."). At the close of the state's evidence, defendant moved that the indictment be dismissed due to a variance between the acts charged in the indictment and those proved at trial. The essence of defendant's position hinged on the absence of any misrepresentation by him as to his identity when he cashed various counter checks at the bank's branch offices. The critical issue becomes the variance between the misrepresentations alleged in the indictment and those proved at trial. Contrary to the conclusion of the Court of Appeals, we believe the variance here to be fatal; and we reverse.

In testing the state's proof of the offense, we turn first to the language of the indictments. The indictment concerning the 8 October 1981 incident states, in pertinent part,

> Barry Lee Linker did unlawfully, wilfully and feloniously and knowingly and designedly with the intent to cheat and defraud obtain United States currency from Wachovia Bank and Trust Company without making proper compensation or bona fide arrangements for compensation. This property was obtained by means of defendant Barry L. Linker, who had no valid account with Wachovia Bank and Trust Company, representing himself as Barry W. Linker who did have a valid account and cashed a check for $190.00.

The indictment concerning the 22 October 1981 incident states, in pertinent part,

> Barry Lee Linker did unlawfully, wilfully and feloniously and knowingly and designedly with the intent to cheat and defraud attempted [sic] to obtain United States currency from Wachovia Bank and Trust Company without making proper compensation or bona fide arrangements for compensation. In attempting to obtain the property, the defendant Barry L. Linker, who had no valid account with Wachovia Bank and Trust Company, represented himself as Barry W. Linker who did have a valid account and attempted to cash a check for $120.00.

Thus, both indictments specify the false pretense, *i.e.*, misrepresentation of his identity, under which defendant obtained or attempted to obtain property from the banks.

The crux of each indictment was defendant's "representing himself as Barry W. Linker." Although defendant offered his own testimony to show why he used a bank account number other than his own (*i.e.*, that of Barry W. Linker) to obtain money from the bank,[1] we find it necessary to consider only the state's

---

1. Defendant testified at length. Summarizing briefly, we note that he claims to have made numerous deposits to his account in 1979 through 1981 which were never credited to him. His "personal banker" (whom he could not identify) allegedly checked the computer records and found the deposits had been recorded in a Salisbury, North Carolina account carrying the name, "Barry W. Linker." According to defendant, she, apparently believing the Salisbury account was actually

evidence in determining whether the misrepresentation, if any, proved at trial varied fatally from that alleged in the indictment. The essential facts established by the state's evidence, set out below, are not in dispute.

On 8 October 1981 defendant went to the Wachovia branch at Eastland Mall in Charlotte, North Carolina. He told Linda Morgan, a secretary, that he did not have any checks or his account number and asked her to write out a counter check for him. After taking defendant's driver's license (which identified him as Barry L. Linker), she checked the computer records for an account number. She noted that the middle initial on the driver's license was "L", while the computer entry for the account showed "W". When she questioned him about the differing middle initials, defendant told her the initial on the account was wrong. She wrote the counter check for him in the amount of $190, which he signed without using a middle initial. Linda Morgan stated on cross-examination that defendant at no time represented to her that he was Barry W. Linker.

On 22 October 1981 defendant went to Wachovia's Sugar Creek branch. He asked Grace Galloway, a secretary, to complete a counter check for him, giving her the account number for Barry W. Linker's account, which he had obtained from Linda Morgan. When she asked for identification, he told her to call Morgan at the Eastland branch. Meanwhile, Jack Johnson, the branch operations manager, came over and assumed the transaction. He remembered a bank alert dealing with defendant. Johnson, who knew defendant, examined defendant's driver's license (which identified him as Barry L. Linker) and stalled him until police arrived. Both Galloway and Johnson testified on cross-examination that defendant never represented to them that he was Barry W. Linker.

The gist of obtaining property by false pretense is the false representation of a subsisting fact intended to and which does

---

defendant's account, gave him the Salisbury account number and told him to use it until he got new checks with his new account number. Defendant said he lived with his parents, and ordinarily, "my mother writes my checks because I am not too smart in spelling, I sign the checks." We find it unnecessary to consider or assess defendant's testimony as we analyze the variance between indictment and evidence based upon the state's case alone.

deceive one from whom property is obtained. *State v. Cronin*, 299 N.C. 229, 242, 262 S.E. 2d 277, 286 (1980). The state must prove, as an essential element of the crime, that defendant made the misrepresentation as alleged. *See State v. Yancey*, 228 N.C. 313, 317-18, 45 S.E. 2d 348, 351 (1947); *State v. Carlson*, 171 N.C. 818, 89 S.E. 30 (1916). If the state's evidence fails to establish that defendant made this misrepresentation but tends to show some other misrepresentation was made,[2] then the state's proof varies fatally from the indictments. *See State v. Keziah*, 258 N.C. 52, 54, 55, 127 S.E. 2d 784, 786 (1962) (fatal variance in trial for perjury where indictment charged defendant with testifying that he sold liquor to Johnson and Erwin but evidence showed defendant testified only that he bought no liquor "in that house"); *State v. Nunley*, 224 N.C. 96, 97, 29 S.E. 2d 17, 17 (1944) (indictment alleging larceny of a specific amount of money and papers varied fatally from proof of larceny of two suitcases). In that situation, a defendant's motion to dismiss should be allowed with leave to the state to secure another indictment, if so advised. *State v. Hicks*, 233 N.C. 31, 34, 62 S.E. 2d 497, 499 (1950). This rule protects criminal defendants from vague and nonspecific charges and provides them notice so that if they have a defense to the charge as laid, they may properly and adequately prepare it without facing at trial a charge different from that alleged in the indictment.

The indictments explicate the alleged misrepresentation in clear and unequivocal terms: Defendant "represented himself as Barry W. Linker." The record clearly reflects that the state failed to prove that defendant represented himself as Barry W. Linker. Without exception, each of the state's witnesses testified that defendant never represented himself as Barry W. Linker. Instead, he gave each bank employee his driver's license which established that he was, in fact, Barry L. Linker. Simply put, defendant never made the misrepresentation charged in both indictments.

The Court of Appeals, in affirming defendant's conviction, concluded that the evidence supported "the permissible inference that defendant implicitly represented himself to be Barry W.

---

2. The state's evidence might arguably allow an inference that defendant misrepresented his account number or gave a wrong account number to Galloway or that he misrepresented to both Galloway and Linda Morgan that he had a Wachovia account when he did not. Neither indictment alleges either type of misrepresentation however.

Linker, when in fact he was not . . . ." We cannot agree with that conclusion in light of the state's own evidence. Defendant positively identified himself with his driver's license to each bank official. He neither told anyone nor did anything to imply that he was Barry W. Linker. Given defendant's constant, positive, and verifiable identification of himself as Barry L. Linker, the evidence simply fails to support an inference that he impliedly misrepresented himself as alleged in the indictment.

Because the state's proof varied fatally from the allegations in the indictment, the trial court erred in failing to grant defendant's motion to dismiss. Accordingly, the decision of the Court of Appeals is reversed and the case is remanded with instructions to dismiss the indictments, with leave to the state to obtain other indictments, if it is so advised.

Reversed and remanded.