STATE OF NORTH CAROLINA v. ELLIOTT CLIFTON HOPKINS

No. 8322SC1132

(Filed 2 October 1984)

1. **False Pretense § 1— false pretense distinguished from passing worthless checks—additional representation**

   Defendant was properly indicted and convicted for obtaining property by false pretenses under G.S. 14-100, rather than for passing worthless checks under G.S. 14-106 and 107, where defendant made an affirmative and false representation regarding his employment status, and thereby made an additional misrepresentation beyond the presentation of a worthless check.

2. **False Pretense § 3.1— motion to dismiss—evidence sufficient**

   There was sufficient evidence for conviction under G.S. 14-100 where defendant made a false representation of a "subsisting fact," his employment status; where there was evidence from which the jury could reasonably infer that seven payroll checks had not been issued to defendant, an ex-employee, on a closed account a week after the dissolution of the business, and that such evidence revealed an intent to defraud; and where the store to which the check was presented was deceived, and defendant received value, despite the fact that the check was not presented for payment. G.S. 14-106.

3. **False Pretense § 3— evidence from which intent could be inferred—relevant**

   In a prosecution for obtaining property by false pretense, testimony that the business on which the check had been drawn had closed its account and that all checks presented against the account had been and would be dishonored was clearly relevant.

4. **Searches and Seizures § 37— passenger area of automobile—plain view—warrantless search of envelopes and wallets—evidence of a separate crime**

   Where contraband in plain view was observed from a legally obtained vantage point beside defendant's car and defendant was lawfully arrested, envelopes and wallets were potential "containers" of evidence and could be the

subject of a warrantless search. Evidence found therein was properly admitted even if it constituted evidence of a wholly separate crime.

APPEAL by defendant from *Cornelius, Judge.* Judgment entered 10 August 1983 in Superior Court, IREDELL County. Heard in the Court of Appeals 17 September 1984.

Defendant was indicted for violations of G.S. 14-100, obtaining property by false pretense; G.S. 90-95, misdemeanor possession of marijuana; and G.S. 90-113.22, possession of drug paraphernalia. At the close of the State's evidence the Court, on its own motion, dismissed the drug related charges. Defendant was found guilty of obtaining property by false pretense and sentenced to three years in prison.

The State's evidence shows that on 1 May 1983, the defendant, Elliott Hopkins, presented a $165 payroll check to a Roses Department Store in exchange for merchandise and cash change. The check was typed, signed with a signature stamp, issued 29 April 1983, and made payable to the order of Elliott C. Hopkins. In order to cash the check, defendant displayed to the store clerk an employment identification card from his alleged employer, United Credit Help (United). In reality, the defendant was a former, not present, employee of United. Moreover, the company had dissolved on 19 April 1983 and closed its bank account. As defendant was leaving the store, Roses received a bulletin regarding bad checks drawn on United's account and immediately called the Statesville Police Department. The suspicious check was turned over to the police and was never deposited or presented to the drawee, First Union National Bank.

In response to the complaint, the defendant was stopped and questioned by Officer D. L. Drum of the Statesville Police Department. As defendant sat in his rented vehicle, the officer noticed marijuana in plain view in the passenger compartment. Officer Drum arrested the defendant for possession and secured the defendant in his patrol car. An immediate search of the passenger and glove compartment incident to this arrest produced evidence related to the present case. This evidence included a wallet containing the false identification, a large amount of currency and six United payroll checks in a white envelope, three of which were payable to defendant. The checks bore the date of 29 April 1983,

the same date on the one presented to Roses. The envelope also contained a copy of Chapter 14 of the General Statutes. At the police station, defendant gave his written, informed consent to the search of the vehicle's trunk compartment. This additional search produced a metal signature stamp bearing the name of Ronald McGill, owner of United, and the purported payor of defendant's payroll checks.

The trial court refused to exclude the fruits of the two searches or to reduce the offense charged to a misdemeanor worthless checks violation. The jury returned a verdict of guilty and defendant appeals.

*Attorney General Edmisten, by Associate Attorney Michael Smith, for the State.*

*Constance T. Barker, for defendant appellant.*

VAUGHN, Chief Judge.

[1] The defendant's initial contention is that it was improper for him to have been convicted under the felony false pretense statute, G.S. 14-100, when the misdemeanor offense of passing worthless checks, G.S. 14-106 and 14-107, was allegedly applicable. We disagree.

In *State v. Freeman*, 308 N.C. 502, 302 S.E. 2d 779 (1983), our Supreme Court expressly rejected this defendant's position on remarkably similar facts. In that case, the Court affirmed Freeman's conviction under G.S. 14-100 for aiding and abetting in the false representation that one Harry Gaston was an employee of Budget Merchandise and Financing Company (Budget), and that Gaston was entitled to cash a payroll check on Budget's bank account. In reality, Freeman knew at the time that Budget was a fictitious business, created for the express purpose of defrauding merchants. Freeman was indicted and tried under G.S. 14-100 because he did more than present a worthless check. He helped to create and perpetuate the appearance of a non-existent business, the purpose and effect of which was to deceive others.

The *Freeman* Court reemphasized that the crime of obtaining property by false pretense pursuant to G.S. 14-100 requires: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which

does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *Id.* at 511, 302 S.E. 2d at 784 (*quoting State v. Cronin*, 299 N.C. 229, 242, 262 S.E. 2d 277, 286 (1980)). When these elements are present, a wrongdoer may properly be indicted and convicted of obtaining property by false pretenses under G.S. 14-100. *Freeman* illustrates that the passing of a worthless check in the criminal scheme does not preclude an indictment for this offense. G.S. 14-100 and a worthless checks offense under G.S. 14-106 and 14-107 are not coextensive. Prosecution under the former is improper only where there is no additional misrepresentation beyond the presentation of a worthless check. A wrongdoer is not insulated from greater criminal liability for such additional acts simply because a worthless check is involved.

In the present case, defendant also did more than merely present a worthless check. By presenting an employee identification card, defendant made an affirmative and false representation regarding his employment status. "[T]he crime of obtaining property by means of a false pretense may be committed when one obtains goods . . . by wilful misrepresentation of his identity . . . ." because "[t]he decision of a merchant to extend credit ordinarily turns upon his evaluation of the financial status and history of the applicant." *State v. Tesenair*, 35 N.C. App. 531, 535, 241 S.E. 2d 877, 880 (1978). *See also State v. Kilgore*, 65 N.C. App. 331, 308 S.E. 2d 876 (1983) (defendant's conviction under G.S. 14-100 upheld because he improperly portrayed himself as an agent after his authorization had been terminated). Defendant did not create a fictitious business as did Freeman, but he nevertheless perpetuated and took advantage of the appearance of legitimacy surrounding United, a business which was in dissolution and whose bank account had been closed. It was therefore appropriate for defendant to have been indicted under G.S. 14-100. Since there is, as a result, no ambiguity in the applicable law, defendant's claims of due process and double jeopardy violations are without merit.

[2] Alternatively, the defendant maintains that the State's evidence was insufficient to prove the individual elements necessary for conviction under G.S. 14-100, as set forth in *State v. Cronin, supra*. We disagree. First, defendant made a false representation of a "subsisting fact," his employment status, when he presented

the worthless check to Roses. G.S. 14-100; *see* discussion, *supra.* Second, there was sufficient evidence to support a reasonable jury conclusion that defendant "made the false pretense charged with an intent to defraud." G.S. 14-100; *see State v. Phillips*, 228 N.C. 446, 45 S.E. 2d 535 (1947). "Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Bell*, 285 N.C. 746, 750, 208 S.E. 2d 506, 508 (1974). "[I]n determining the presence or absence of the element of intent, the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged. . . ." *State v. Norman*, 14 N.C. App. 394, 399, 188 S.E. 2d 667, 670 (1972). In the present case, this circumstantial material includes the evidence found in defendant's car, evidence that United had been dissolved and had closed its bank account, and the evidence of defendant's misrepresentation. It is defendant's position that this evidence is negated by Roses' failure to actually present the check to First Union for payment. The record clearly indicates, however, that the account was closed and that all checks presented would not be honored but returned. The jury could, as a result, reasonably infer that United did not issue seven payroll checks to the defendant, as an ex-employee, drawn on a closed account a week after dissolution and that such evidence revealed an intent to defraud.

Third, the record shows that Roses was in fact deceived and fourth, that defendant did receive value from the store as a result. Once again, it is of no importance that Roses did not actually present the check for payment. Roses was nevertheless deceived when it gave up cash and merchandise for the worthless check. This is not a case where the drawer sustains a loss because of a lack of due diligence in presentment for payment. *Compare Nunn v. Smith*, 270 N.C. 374, 154 S.E. 2d 497 (1967) (lack of due diligence in presenting a check within a reasonable time will operate as constructive payment of the debt for which it is given). Roses acted reasonably in immediately turning the check over to the police. Unlike the language of G.S. 14-106, G.S. 14-100 did not require them to needlessly pursue the formalities of commercial paper while a suspect escaped. The trial court therefore made no error in denying defendant's motions to dismiss due to insufficient evidence.

[3]   Defendant next argues that the trial court erred in admitting the testimony of David S. Lanier, First Union's branch manager, on the grounds that such testimony was not relevant to any issue in the case. This contention is without merit. "To be relevant, evidence must have some logical tendency to prove a fact at issue in the case. [Citation omitted.] '[E]vidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact.' " *State v. Wilson,* 57 N.C. App. 444, 450, 291 S.E. 2d 830, 834, *cert. denied,* 306 N.C. 563, 294 S.E. 2d 375 (1982) (*quoting State v. Arnold,* 284 N.C. 41, 199 S.E. 2d 423 (1973) ). In the case at hand, Lanier testified that United's account had been closed and that all checks presented against this account had been and would be dishonored. This evidence is clearly relevant. At the very least, it describes a circumstance by which defendant's fraudulent intent may be inferred and helps to discount his claim of legitimate possession of the checks. *Supra.* Lanier's testimony was also relevant to show the reasonableness of Roses' reaction and to establish the validity of defendant's initial detention at the hands of Officer Drum. *See, e.g., Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2641, 61 L.Ed. 2d 357, 362 (1979) (brief detention for questioning is a seizure and may be grounded on a "reasonable suspicion, based on objective facts, that the individual is involved in criminal activity"). There was no error in admitting Lanier's testimony.

[4]   In his final assignment of error, defendant claims that the warrantless searches of his car violated the Fourth and Fourteenth Amendments to the United States Constitution and that the evidence obtained in these searches should have been excluded at trial. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961).

The first search of defendant's vehicle was limited to the passenger compartment and was properly conducted as a search incident to a valid arrest. The permissible scope of such searches is set forth in the recent decision of *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed. 2d 768 (1981). *Accord, State v. Cooper,* 304 N.C. 701, 286 S.E. 2d 102 (1982).

In *Belton,* the United States Supreme Court adopted a "bright line" rule whereby any police officer who has made a

lawful custodial arrest of the occupant of a vehicle may make a contemporaneous warrantless search of both the vehicle's passenger compartment and the contents of any containers found therein. " 'Container' here denotes any object capable of holding another object. It thus includes closed or open glove compartments . . . as well as luggage, boxes, bags, clothing, and the like." *Belton*, 453 U.S. at 461 n. 4. Moreover, the term "contemporaneous" has been defined so as to permit the search of a vehicle even after the suspect has been arrested and secured apart from his vehicle. *Cooper, supra.*

In the case *sub judice*, defendant was properly detained and questioned by Officer Drum in response to the Roses complaint. *See Brown v. Texas, supra; State v. Jones*, 304 N.C. 323, 283 S.E. 2d 483 (1981). From his legally obtained vantage point beside defendant's car, Dunn observed contraband in plain view in the passenger compartment and lawfully arrested defendant with probable cause. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed. 2d 1067 (1968); *State v. Smith*, 289 N.C. 143, 221 S.E. 2d 247 (1976). He then secured defendant in his patrol car and searched the vehicle in accordance with the *Belton* ruling.

Defendant concedes that he was validly detained and arrested, but attempts to distinguish *Belton* on the facts. In both *Belton* and the present case, probable cause for arrest was based on the sighting of illegal drugs, in plain view, in the passenger compartment. In *Belton*, however, the search incident to arrest produced additional contraband *per se* and not the evidence of a wholly separate crime. Defendant therefore contends that any search based on an arrest for possession of a controlled substance must be limited to a search for similar material. We believe this position to be completely untenable. First of all, *Belton* authorizes the search and seizure of any "evidence," as well as contraband, within the area under the control of defendant. Since evidence may be found in many forms, it would completely emasculate the *Belton* "bright line" rule to delineate and link different levels of searches to a myriad of underlying offenses. The purpose and effect of the *Belton* rule is to remove all doubt about the proper scope of a search incident to the valid arrest of a vehicle's occupant. We therefore hold that envelopes and wallets are properly considered potential "containers" of evidence and may be the sub-

ject of a warrantless search under *Belton* and *Cooper*. The results of this search were properly admitted into evidence.

No error.

Judges WHICHARD and JOHNSON concur.