STATE OF NORTH CAROLINA v. DONALD ABERNATHY FREEMAN

No. 8526SC626

(Filed 4 February 1986)

1. Criminal Law § 34.6— false pretenses—question about prior use of false identi-
fication—no error

The trial court did not err in a prosecution for false pretenses by allowing
the prosecutor to question defendant about his use of false identification four
or five years prior to the trial. The use of false identification is probative of a
witness's tendency to be truthful. N.C.G.S. 8C-1, Rule 608(b).

2. Criminal Law § 86.2— false pretenses—passing bad checks in the past—admis-
sible

The trial court did not err in a prosecution for false pretenses by admit-
ting testimony that defendant had been involved in passing bad checks in the
past where defendant maintained that he was mistaken about the legitimacy of
the checks and the objected to testimony tended to prove his knowledge, in-
tent, and lack of mistake. N.C.G.S. 8C-1, Rule 404(b).

3. Criminal Law § 86.2— letters written while defendant in prison—testimony ad-
missible

The trial court did not err in a prosecution for false pretense by permit-
ting a witness to refer to letters written by defendant while defendant was in
jail because the testimony did not clearly show that defendant was imprisoned
and there was no prejudicial effect in light of defendant's own testimony that
he had prior convictions and that he had been involved with other bad check
schemes.

4. False Pretense § 2.1— check cashing scheme—instruction on collateral misrep-
resentation—no error

The jury charge did not allow a conviction on a theory not charged in the
indictment where defendant was indicted for false pretenses in that he cashed
a check drawn on the account of Brown-Invesco Services, the jury charge was
that the State must prove that defendant said that Brown-Invesco Services
was a janitorial service company in operation or that he misrepresented
himself as an employee of the C. W. Haben Company to the cashier of the
department store which cashed the check, defendant had to present some iden-
tification in order to have the check accepted, and the collateral pretense of
employment by C. W. Haben and Associates was a means to the ultimate
misrepresentation that Brown-Invesco was a legitimate company and that
checks drawn on its account were worthy of acceptance.

5. False Pretense § 4; Constitutional Law § 78— false pretense offenses—thirty-
year sentence—no error

A thirty-year sentence for false pretenses was not cruel and unusual
punishment in that defendant's offense was essentially passing worthless
checks where defendant engaged in a misrepresentation beyond presenting
worthless checks in that he set up or was involved with an organized check

cashing operation involving the false representation of defendant's employment status and the pretense that Brown-Invesco was a legitimate business. N.C.G.S. 14-100, N.C.G.S. 14-107.

**6. False Pretense § 2.1— check cashing scheme—indictment under N.C.G.S. 14-100—no error**

The trial court did not err by not quashing indictments for false pretenses under N.C.G.S. 14-100 where defendant's alleged conduct was governed by the more specific statutes of N.C.G.S. 14-106 and N.C.G.S. 14-107. As long as defendant makes some additional misrepresentation beyond the presentation of a worthless check, he may be prosecuted under N.C.G.S. 14-100.

APPEAL by defendant from *Burroughs, Judge*. Judgment entered 18 January 1985 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 29 October 1985.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Ann Reed, for the State.*

*Acting Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Gordon Widenhouse,[1] for defendant appellant.*

BECTON, Judge.

The defendant, Donald Abernathy Freeman, appeals five convictions (three counts of false pretenses under N.C. Gen. Stat. Sec. 14-100 (1981) and two counts of conspiracy to commit false pretenses) and the sentences imposed, totalling thirty years.

I

The prosecution presented its case primarily through Harold Brown, defendant's co-conspirator, who testified that Brown and defendant agreed to set up a check-cashing scheme that worked as follows: At the direction of defendant Freeman, Brown went to a bank and opened a business checking account in the name of Brown-Invesco Services, a sham janitorial service company with

---

1. We note that defendant, purporting to act pro se, has filed numerous supplemental motions, briefs and memoranda prompted by his dissatisfaction with his representation before this Court by the Public Defender. The Public Defender has not been dismissed previously, and we decline to do so now. We also deny defendant's motions. However, because of defendant's litigiousness, we have considered the arguments he presents in his several briefs, and we find them to be without merit.

no employees. Bank officials testified that money was passed from Brown-Invesco to Queen City Janitorial Service. Brown also gave Freeman a sample signature which Freeman used to obtain a signature stamp. Freeman would type checks, use a check-writing machine to fill in dollar amounts, and use the signature stamp to put Brown's signature on the checks. Brown and Freeman also rented a post office box and two motel rooms, one of which was used for business.

Various witnesses presented by the prosecution testified that defendant gave them checks with which to purchase goods and told them to return the excess money to him. They maintained that the defendant said the checks were legal. Two State witnesses testified that they were cashiers at two different Richway stores and that they each cashed checks for a black male using the same driver's license. One of these witnesses had written on the back of the check "Work I.D., C.W. Haben & Associates." Both checks were returned to the stores unpaid. Maurice Clifton testified that defendant gave him a check drawn on Queen City Janitorial Service and that Clifton cashed the check and gave defendant some of the money.

Defendant's witnesses testified that Brown used the signature stamp and gave them checks, but defendant did not. Defendant testified that although he knew how to run a check-writing operation, he was not involved in Brown's scheme. He denied accompanying any of the witnesses to the stores when they allegedly cashed checks for him, but he admitted receiving two checks, which he thought were legitimate, and cashing them at Richway stores.

The defendant contends the trial court committed the following reversible errors: (1) allowing the prosecutor to cross-examine the defendant concerning a specific instance of conduct not probative of truthfulness; (2) admitting into evidence irrelevant and prejudicial testimony about defendant's prior acts; (3) allowing a testimonial reference to letters defendant wrote while in jail; (4) charging the jury on false pretenses in connection with defendant's use of an employment card when this theory was not alleged in the indictment; (5) imposing a thirty-year sentence for false pretenses in violation of the prohibition against cruel and unusual punishment; and (6) denying defendant's motion to quash the false

pretenses indictments which charged general offenses when the legislature had enacted more specific statutes governing defendant's alleged conduct. After careful review of each assignment of error, we hold that the trial court committed no errors. The convictions and sentence are upheld.

## II

[1] Defendant's first assignment of error relates to the line of cross-examination by the prosecutor, allowed over objection, questioning defendant about his use of false identification four or five years prior to the trial in this case. Defendant's argument rests on the application of Rule 608(b), N.C. Rules Evid., to the facts in this case. Rule 608(b), identical to its federal counterpart, prohibits the use of extrinsic evidence to prove specific instances of conduct, but it grants the trial court discretion to allow inquiry into specific instances of conduct, if they are probative of the truthfulness of the witness, in order to prove the witness' character for truthfulness or untruthfulness. Defendant cites federal cases to show that certain acts are not probative of truthfulness or untruthfulness. *See, e.g., United States v. Hill*, 550 F. Supp. 983, 989-90 (E.D. Pa. 1982) (prior acts of disorderliness, trespass, and false imprisonment), *aff'd*, 716 F. 2d 893 (3rd Cir. 1983), *cert. denied*, 464 U.S. 1039, 79 L.Ed. 2d 165, 104 S.Ct. 699 (1984); *United States v. Hastings*, 577 F. 2d 38, 40-41 (8th Cir. 1978) (armed robbery); *United States v. Bynum*, 566 F. 2d 914, 923 (5th Cir.) (holding foster children against their will to work for witness), *cert. denied*, 439 U.S. 840, 58 L.Ed. 2d 138, 99 S.Ct. 129, 130 (1978).

Although we agree that many prior specific acts, while criminal, are not necessarily probative of truthfulness, we believe the prior use of false identification is probative of a witness' tendency to be truthful. There is ample support for this in federal decisions under Rule 608(b). *See, e.g., United States v. Mansaw*, 714 F. 2d 785, 789 (8th Cir.) (use of false names), *cert. denied*, 464 U.S. 986, 78 L.Ed. 2d 366, 104 S.Ct. 434 (1983); *United States v. Reid*, 634 F. 2d 469, 473-74 (9th Cir. 1980) (false statements eight years prior to trial regarding name, occupation, and name of business), *cert. denied*, 454 U.S. 829, 70 L.Ed. 2d 105, 102 S.Ct. 123 (1981); *Lyda v. United States*, 321 F. 2d 788, 793 (9th Cir. 1963) (use of false names).

### III

**[2]** Defendant's second assignment of error is that the testimony of certain witnesses, to the effect that defendant had been involved with passing bad checks in the past, should have been excluded as irrelevant and prejudicial. Defendant acknowledges in his brief that the testimony would be admissible if it tended to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." Rule 404(b), N.C. Rules Evid. Defendant maintained in his own defense at trial that he was mistaken about the legitimacy of the checks and had no knowledge that the janitorial service was a sham. We believe the testimony objected to by defendant tended to prove his knowledge, intent, and lack of mistake as to whether the checks were good. If defendant had been involved with schemes of this type before, his assertions of ignorance and mistake hold less weight. *See United States v. Sparks*, 560 F. 2d 1173, 1175 (4th Cir. 1977) (Evidence that defendant previously passed worthless checks to same airline was probative of intent and knowledge under Rule 404(b).); *see also United States v. DeLoach*, 654 F. 2d 763, 769 (D.C. Cir. 1980), *cert. denied*, 450 U.S. 933, 67 L.Ed. 2d 366, 101 S.Ct. 1395 (1981).

### IV

**[3]** Defendant asserts that the trial court erred in permitting a witness to refer to letters written by defendant while defendant was in jail because it tended to prejudice defendant in the eyes of the jury. We note that, although the testimony indicates that the witness (the recipient of the letters) was in jail, it does not clearly show that *defendant* was imprisoned. In any event, we conclude that there was no prejudicial effect from these references in light of defendant's own testimony that he had prior convictions and that he had been involved with other bad check schemes. The trial court did not abuse its discretion.

### V

**[4]** Defendant's fourth argument is that the jury charge improperly allowed a conviction on a theory not charged in the indictment. The 9 July 1984 indictment for false pretenses charged, in relevant part:

The property was obtained by means of Donald Abernathy [Freeman] who represented himself to be an employee of Brown-Invesco Service, presenting to Federated Department Stores, Inc., a corporation doing business as Richway for payment for goods and for cashing check number 320 drawn to Donald Abernathy [Freeman], on the account of Brown-Invesco Service, which appeared to be a legitimate business, when in fact, Donald Abernathy knew at the time he presented the check that Brown-Invesco Service was not a legitimate business, but rather had been created by Harold Brown and was existing for the purpose of inducing merchants to cash checks drawn on the account of Brown-Invesco Service which were, in fact, worthless, although the checks appeared to be checks from a legitimate business, presented by persons who appeared to be employees of the business.

The jury charge on this incident was, in part, as follows:

So I charge in order for the State to prove beyond a reasonable doubt that the defendant is guilty of false pretense, the State must prove five things beyond a reasonable doubt; First, that the defendant said that Brown-Invesco Services was a janitorial service in operation, or that he represented himself to be an employee of C.W. Haben Company to the cashier of Richway Department store.

\*     \*     \*

So I charge that, if you find from the evidence beyond a reasonable doubt that on or about April 20, 1984 Mr. Freeman, acting either by himself or acting together with Harold Brown, presented a check on Brown-Invesco Services, knowing it was not a real business, or that he presented worker I.D. of C.W. Haben to Ms. Cole, and this representation was false in that Brown-Invesco was not an operating business, or he did not work for C.W. Haben, and that this representation was calculated and intended to deceive, and that Ms. Cole and Richway were, in fact, deceived by it, and that Mr. Freeman thereby obtained money or merchandise, it would be your duty to return a verdict of guilty of obtaining property by false pretense.

Defendant argues that because the second theory, that the false representation was the use of an identification card with "C.W.

Haben & Associates" on it, was not charged in the indictment, it was improper to submit it to the jury. We disagree.

In *State v. Linker*, 309 N.C. 612, 308 S.E. 2d 309 (1983), the defendant had used the bank account of a man named Barry W. Linker to obtain money, but he did so by using his own driver's license with his true name on it, Barry L. Linker. He explained the discrepancy to the bank secretary as an error on the bank account (not as an error on his license). He never represented himself as anyone but Barry L. Linker. The indictments, however, charged defendant with violations under G.S. Sec. 14-100(a) by "representing himself as Barry W. Linker." The Supreme Court said:

> The gist of obtaining property by false pretense is the false representation of a subsisting fact intended to and which does deceive one from whom property is obtained. . . . The state must prove, as an essential element of the crime, that defendant made the misrepresentation as alleged. . . . If the state's evidence fails to establish that defendant made this misrepresentation but tends to show some other misrepresentation was made, then the state's proof varies fatally from the indictments. . . . In that situation, a defendant's motion to dismiss should be allowed with leave to the state to secure another indictment, if so advised. . . . This rule protects criminal defendants from vague and nonspecific charges and provides them notice so that if they have a defense to the charge as laid, they may properly and adequately prepare it without facing at trial a charge different from that alleged in the indictment.

*     *     *

> The Court of Appeals, in affirming defendant's conviction, concluded that the evidence supported "the permissible inference that defendant implicitly represented himself to be Barry W. Linker, when in fact he was not . . . ." We cannot agree with that conclusion in light of the state's own evidence. Defendant positively identified himself with his driver's license to each bank official. He neither told anyone nor did anything to imply that he was Barry W. Linker. Given defendant's constant, positive and verifiable identification of himself as Barry L. Linker, the evidence simply fails

to support an inference that he impliedly misrepresented himself as alleged in the indictment.

309 N.C. at 614-16, 308 S.E. 2d at 310-11 (citations and footnote omitted). The Court mentioned in a footnote that:

> The state's evidence might arguably allow an inference that defendant misrepresented his account number or gave a wrong account number to Galloway or that he misrepresented to both Galloway and Linda Morgan that he had a Wachovia account when he did not. Neither indictment alleges either type of misrepresentation however.

*Id.* at 615 n. 2, 308 S.E. 2d at 311.

Applying the rule of *Linker* to the case at bar, the jury charge, taken as a whole, was proper. It allowed a conviction only on the theory that defendant misrepresented Brown-Invesco as a legitimate business. The defendant relies on the disjunctive language in the jury charge to show that the trial court allowed the jury to convict defendant even if they believed the only fact he misrepresented was his employment at C.W. Haben & Associates. But this ignores the undisputed fact that the check was drawn on the account of the Brown-Invesco Company. Defendant had to present some identification in order to have the Brown-Invesco check accepted by the Richway store cashier. It was through this collateral pretense (that he was still an employee of C.W. Haben & Associates) that defendant was able to accomplish the ultimate misrepresentation—that Brown-Invesco was a legitimate company and checks drawn on Brown-Invesco were worthy of acceptance in the stream of commerce. In other words, if the defendant either "said that Brown-Invesco Services was a janitorial service in operation" or implicitly represented that it was, by the C.W. Haben employee ruse, the result was the same: the victims were duped into believing that Brown-Invesco was a business in operation in the community.

There is no question that the indictment charged all of the elements of false pretenses under N.C. Gen. Stat. Sec. 14-100 (1981). The jury charge did not vary from these elements; it simply applied the detailed evidence adduced at trial to the elements charged in the indictment. The trial court is not bound in charging the jury by the description of the crime exactly as it appears

in the indictment. *See State v. Gray*, 292 N.C. 270, 292-93, 233 S.E. 2d 905, 919-20 (1977). The defendant had adequate notice of the charges against him, and the jury was not instructed on elements of the crime which diverged from those in the indictment. In contrast to *Linker*, there was ample evidence in the case at bar that the defendant made the misrepresentation as alleged.

The other cases cited by defendant are also distinguishable. They involve jury charges allowing convictions on theories of the crime based on elements entirely different from those alleged in the indictments. *See, e.g., State v. Brown*, 312 N.C. 237, 249, 321 S.E. 2d 856, 863 (1984) (indictment alleged kidnapping to facilitate felony; jury charge improperly allowed conviction on theory that kidnapping was to terrorize victim).

## VI

[5] Defendant's fifth assignment of error is that the imposition of a thirty-year sentence for false pretenses constitutes cruel and unusual punishment because it is disproportionately long when compared with the sentence he would have received for the similar misdemeanor offense of passing worthless checks. *Compare* G.S. Sec. 14-100 (obtaining property by false pretenses) *with* N.C. Gen. Stat. Sec. 14-107 (1985 Cum. Supp.) (worthless checks). Defendant's contention is based on the notion that essentially all he did in this case was pass worthless checks.

It is settled that the State may prosecute under G.S. Sec. 14-100 rather than G.S. Sec. 14-107 if there is any additional misrepresentation beyond the presentation of a worthless check, *State v. Hopkins*, 70 N.C. App. 530, 320 S.E. 2d 409 (1984), even though G.S. Sec. 14-107 more specifically fits the alleged transaction. *State v. Freeman*, 308 N.C. 502, 511-12, 302 S.E. 2d 779, 784-85 (1983). In *Hopkins*, the additional misrepresentation supporting the prosecution under G.S. Sec. 14-100 was the defendant's "affirmative and false representation regarding his employment status." 70 N.C. App. at 533, 320 S.E. 2d at 411. Defendant in *Hopkins* had used an identification card from his former business which had since dissolved. This Court found that he had "perpetuated and [taken] advantage of the appearance of legitimacy surrounding" his former business employer. *Id.* In *Freeman*, the defendant had aided and abetted in misrepresenting to the check-casher, a supermarket, that his cohort was an

employee of a legitimate business. The business "had in fact been set up by the defendant; and . . . the business existed for the sole purpose of inducing merchants to cash worthless checks." 308 N.C. at 511, 302 S.E. 2d at 784.

> A defendant may obtain money or property by falsely representing his own identity (which defendant's cohorts effectively did as purported employees of Budget Merchandise and Financing Company) or he may do so by creating the identity of a "business" calculated to engender confidence in the inherent worth of the check.

*Id.* at 512, 302 S.E. 2d at 785.

The evidence in the case sub judice demonstrates that the defendant did engage in misrepresentation beyond presenting worthless checks. The evidence showed that he set up or was involved with an organized check-cashing operation involving the false representation of his employment status and the pretense that Brown-Invesco was a legitimate business. The offense of passing a worthless check under G.S. Sec. 14-107 may be accomplished by one who has an ordinary checking account, either personal or drawn on a legitimate business, and draws out money knowing that the funds in the account are insufficient to pay the check upon presentation. This would not involve a misrepresentation beyond the value of the check. The legislature acted within its authority in setting different punishments for offenses under G.S. Secs. 14-100 and 14-107. *See generally Solem v. Helm*, 463 U.S. 277, 77 L.Ed. 2d 637, 103 S.Ct. 3001 (1983).

## VII

[6] Defendant's sixth and final contention is that the trial court should have quashed the false pretenses indictments because more specific statutes govern the defendant's conduct. Specifically, defendant argues that because the legislature enacted G.S. Secs. 14-106 and 14-107 after G.S. Sec. 14-100, and because conduct such as that alleged in the case at bar is more specifically governed by the former statutes than by G.S. Sec. 14-100, the State cannot circumvent legislative intent that this conduct be prosecuted under the more specific statutes. Defendant recognizes and we emphasize that this precise argument was rejected after being addressed in some detail by the Supreme Court in *Freeman*, 308

N.C. at 511-13, 302 S.E. 2d at 784-85, and by this Court in *Hopkins*, 70 N.C. App. at 532-33, 320 S.E. 2d at 411-12. We decline to reproduce the same analysis here. As long as defendant makes an "additional misrepresentation beyond the presentation of a worthless check," he may be prosecuted under G.S. Sec. 14-100. *Hopkins*, 70 N.C. App. at 533, 320 S.E. 2d at 411. In the case at bar, defendant's additional misrepresentation, beyond presenting worthless checks, involved the creation of a fictional business with a bank account.

For the reasons set forth above, we find

No error.

Judges WEBB and COZORT concur.