STATE OF NORTH CAROLINA v. NANCY FLUKER

No. COA99-504

(Filed 29 August 2000)

**1. Evidence— prior crime or act—similar act—detainment in department store for shoplifting—no prejudicial error**

Although the trial court erred in a misdemeanor larceny case by allowing the State to cross-examine defendant about her prior detainment in a department store for alleged shoplifting to show the absence of mistake by the State under N.C.G.S. § 8C-1, Rule 404(b), it was not prejudicial error because: (1) defendant did not request a limiting instruction to the jury either at the time the evidence was admitted nor during the jury charge; (2) defendant was caught leaving a department store with store items that had not been purchased and multiple eyewitnesses watched defendant take the store items; (3) defendant gave highly improbable explanations for her actions; and (4) the only evidence of the prior incident was defendant's testimony describing how she was physically and emotionally mistreated, which did not detract from her defense.

**2. Appeal and Error— appealability—issue not raised below—no assignment of error**

Although defendant contends the trial court erred in a misdemeanor larceny case by allowing the State to cross-examine defendant under N.C.G.S. § 8C-1, Rule 608(b) about her prior acquittal for shoplifting at another department store, this argument is not considered because: (1) it does not correspond to the assignment of error it references, nor to any other assignment of error in the record; and (2) the argument was not presented during trial.

**3. Larceny— misdemeanor—motion to dismiss—sufficiency of evidence**

The trial court did not err in a misdemeanor larceny case by denying defendant's motion to dismiss at the close of the State's evidence and at the close of all evidence, because the State presented substantial evidence that defendant entered a department store, obtained empty shopping bags from behind a sales desk, placed merchandise owned by the store into those bags, and carried the bags containing the merchandise out of the store without its consent.

STATE v. FLUKER

[139 N.C. App. 768 (2000)]

Appeal by defendant from judgment entered 8 April 1998 by Judge Ronald L. Stephens in Durham County Superior Court. Heard in the Court of Appeals 21 February 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Linda Kimbell, for the State.*

*Laurence D. Colbert for defendant.*

McGEE, Judge.

Defendant Nancy Fluker was charged with misdemeanor larceny of property belonging to J.C. Penney at South Square Mall in Durham, North Carolina on 1 February 1997. The evidence at trial tended to show that Catherine Cates (Cates), an employee of J.C. Penney for twenty-five years, saw defendant pulling a shopping bag from under Cates's counter at the J.C. Penney's store. When Cates asked if she could help defendant, defendant said she was just looking and walked away. Defendant was holding only a purse and the shopping bag from under the counter. Cates called to alert Malcolm Allen (Allen), a J.C. Penney's security person, about defendant's actions. Cates saw defendant looking at collectible Barbie dolls, each of which was boxed inside a cabinet in the gift registry area. She saw defendant take two dolls into the furniture department, where defendant sat down behind a desk and made a "motion with something between her legs." Cates testified she saw Renee Adkins (Adkins), another security person, also watching defendant as defendant walked out of the store.

Allen testified he saw defendant carrying a purse and flat, empty J.C. Penney's shopping bags draped over her forearm and held close to her stomach. In the baby section, Allen saw defendant picking up items and looking at them. Defendant went into a concealed corner near the stock room and placed baby clothing into a bag.

Allen and Adkins testified they observed defendant take two Barbie doll boxes out of the cabinet. Allen went downstairs to find Cates but received a message on his radio that defendant was about to leave the store. Allen testified that J.C. Penney's policy is to stop suspected shoplifters after they have exited the store. Allen ascended the stairwell in the mall common area adjacent to J.C. Penney and met defendant. Allen took defendant to the security office, and she cooperated. Allen said defendant stated that "she was only bringing some stuff back and the other stuff she was going to buy from the store," for she "was on her way to the bathroom and she was going to

return to the store." Allen testified that J.C. Penney has a bathroom for shoppers inside the store. According to defendant, she did not tell Allen she had left the store to find a bathroom.

Officer A. Z. Jaynes, a Durham police officer, testified defendant denied any wrongdoing and stated that her husband could verify her intent to exchange store items. Officer Jaynes spoke to defendant's husband on the telephone and defendant's husband said he did not see her leave the house and did not know if she had left with bags. Cates received a call instructing her to go to the security office where she identified the dolls in defendant's possession as the same dolls she saw defendant remove from the store.

Defendant testified that she bought "two little short sets, Barbie dolls and a book bag" at a mall in Virginia in the fall of 1996 and that she bought some baby clothes in Durham in October 1996. Defendant said she went to J.C. Penney to exchange the Barbie dolls and blue jean items, and to find something for her house. Defendant stated that she had bought the baby clothes for her neighbors' children, but on cross-examination she did not know the children's first names or the family's surname. Defendant testified that the neighbors moved away before she could give their children the baby clothes, and that defendant kept the baby clothes for months in case the neighbors returned to the house.

Defendant said because she did not have a receipt, when she arrived at J.C. Penney she found the "first person" she could find in the store to ask about exchanges without a receipt. She said she removed the goods from her bag and laid them on the counter. Defendant later identified the employee she talked to as Azuka Spicer (Spicer). Defendant said she noticed Cates watching her when she picked up her bags, so she stood in line at Cates's register. After a few minutes of waiting in line, defendant said she went to find Spicer, who could confirm that defendant owned the items in the bags. A computerized store time sheet showed that Spicer was not working when defendant said they spoke.

Jerry Kite, the manager of the Durham J.C. Penney store, testified that the results of an item inquiry showed that the articles in defendant's bags were not sold in the stores from which defendant claims to have purchased them during the times defendant said she bought them. The items were, however, currently listed in the J.C. Penney inventory. Defendant was convicted of misdemeanor larceny on 6

**STATE v. FLUKER**

[139 N.C. App. 768 (2000)]

April 1998 and sentenced to a 45-day suspended sentence with twelve months of supervised probation. Defendant appeals.

**[1]** Defendant argues the trial court erred by allowing the State to cross-examine her about a prior detainment in a Hecht's department store pursuant to Rule 404(b) of the North Carolina Rules of Evidence. Defendant filed a motion *in limine* on 30 March 1998 requesting that the trial court exclude any reference to a "larceny and unlawful concealment at Hecht's in March, 1995, when in fact the Defendant was found not guilty[.]" The trial court acknowledged the request and told the State before trial "[i]f you do have evidence that might be of a 404 nature, I'm not going to allow you to proceed with that evidence in the presence of the jury." The court continued that "if there is evidence of that nature, you need to notify the Court during the course of the trial . . . and we'll send the jury out. The Court will then rule on whether or not it is admissible."

The trial court later stated just prior to cross-examination of defendant, "Mr. D.A., before we start cross examination, I understand that at least [at] one point in time [] there had been an incident at Hecht's and you wanted the Court to hear you on any inquiry you might make of [defendant] on cross examination in regards to that." The State responded affirmatively and explained:

Certainly it's not a conviction, but it goes to show intent, preparation, plan. Especially in this case, absence of mistake. This isn't just a mistake. [The defendant] was aware something like this could happen if you don't have a receipt or you're exchanging items. So it's not just a big misunderstanding. It might be a big misunderstanding if it happens the first time. But if you're put on notice this could happen, it's less likely the second time this is going to become a big misunderstanding again.

The trial court ruled that defendant "has testified to the extent that this was at least a mistake or a misunderstanding and that for cross-examination purposes, the Court is going to allow inquiry into the incident at [Hecht's] previously, to show absence of mistake." The trial court continued, however:

[S]ince there was a prior adjudication of these charges, Mr. D.A., I'm going to tell you that you will not be able to ask [defendant] about whether or not she was charged with these offenses or what the disposition, if any, was. I will allow you to inquire cautiously about whether or not there was an incident at [Hecht's] on

this date in which [defendant] was stopped with merchandise and questions of that nature, and detained, questioned, and whether or not that—if you desire, whether or not that did not leave an impression on [defendant] to some extent about such activities.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999) provides:

> *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

The State commenced its cross-examination of defendant by asking whether "th[e] whole occurrence [at J.C. Penney] ha[d] been a big misunderstanding," to which defendant maintained that her testimony during direct examination regarding the incident at J.C. Penney had been truthful. Later defendant was asked, "Did you not have an incident on March 21, 1995 at Hecht's Department Store when you were stopped with merchandise there?" Defendant replied, "I plead the [F]ifth." When the trial court ordered defendant to respond, she provided a detailed explanation of how she was treated unjustly during and subsequent to her detainment at Hecht's.

The trial court had determined "that under [Rule] 404, for cross-examination purposes, [] this would be an appropriate inquiry." It added that "under [Rule] 402 [] this is relevant information and [] it's not precluded or excluded by Rule 403." N.C. Gen. Stat. § 8C-1, Rule 403 (1999) provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

First, each of the purposes for which character evidence may be admitted under Rule 404(b) refers to the accused, or the person whose character is in issue. Just as the considerations of "motive, opportunity, intent, preparation, plan, knowledge, [and] identity," in Rule 404(b) pertain to the accused, the same is true for "absence of mistake, entrapment or accident." Thus, the State may attempt to introduce evidence of other crimes, wrongs, or acts to demonstrate that defendant did not make a mistake. However, defendant does not claim she made any mistake in this case. Instead, she claims she

owned the items found in her shopping bag and was detained during an attempt to exchange them.

By contrast, the State characterizes her defense as a claim that the entire incident was a "mistake," which properly stated would be a mistake on the part of the State. Using this characterization, the State attempts to introduce evidence of other crimes, wrongs or acts to prove an "absence of mistake." Rule 404(b) may not be applied in this way. The reason is that the question of whether the State was mistaken in prosecuting a certain defendant hinges on whether that defendant is in fact guilty. Proving guilt or a likelihood of guilt through evidence of other crimes, wrongs or acts is precisely what Rule 404(b) forbids—the use of such evidence "to prove the character of a person in order to show that he acted in conformity therewith." Moreover, if "absence of mistake" were to apply to a mistake in prosecuting, virtually every criminal defendant claiming innocence could implicitly contend that the State was somehow mistaken in prosecuting that defendant.

The United States Court of Appeals for the Sixth Circuit has made the same observations:

> [A]bsence of mistake "on behalf of the government" is not a legitimate basis to admit other acts evidence under Rule 404(b). Rather, it is a restatement of the primary reason for which the evidence is *not* admissible; that is, to suggest that the defendant is guilty (the government is not mistaken) because he committed the same or other crimes before.

*United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) (emphasis in original). Similarly in *United States v. Robinson*, 20 M.J. 752, 753 (1985), the U.S. Navy-Marine Corps Court of Military Review stated:

> We feel much more comfortable, however, with the position taken by the defense at trial and on appeal that the "absence of mistake" mentioned in M.R.E. 404(b) refers only to a mistake on the part of the accused. Such a position seems the only logical one when the litany of exceptions obviously relate to acts of the accused or other person whose character is in issue.

We also acknowledge the State implicitly argues defendant made a mistake to which she does not admit. The State's argument in essence is that defendant, by shopping in J.C. Penney carrying items she owned in a store bag without a receipt, made a mistake simply in

creating a situation where she might again be suspected of larceny. The State contends the evidence from Hecht's was properly admitted "to determine if that experience had not left an impression on the Defendant about such activities." This argument is premised on an overbroad theory of what may constitute a mistake on the part of defendant, and the State is not permitted to offer evidence of other crimes, wrongs or acts for character evidence in such circumstances. Thus, the trial court erred by admitting evidence of a prior detainment at Hecht's to show the absence of mistake by the State pursuant to Rule 404(b), as opposed to any absence of mistake that defendant might claim she made. *See, e.g., State v. Pierce,* 346 N.C. 471, 488 S.E.2d 576 (1997) (evidence that defendant shook and threw his girlfriend's son admissible to show he did not mistakenly inflict fatal injuries to his niece while trying to revive her); *State v. Crawford,* 329 N.C. 466, 406 S.E.2d 579 (1991) (testimony of prior instances of inappropriate child discipline admissible to show absence of mistake by defendant regarding the prudence of coercing child to consume large quantities of water, which caused death); *State v. Freeman,* 79 N.C. App. 177, 339 S.E.2d 56, *cert. denied,* 317 N.C. 338, 346 S.E.2d 144 (1986) (testimony that defendant had previously passed bad checks admissible to rebut his claim that he was mistaken about the legitimacy of later checks and of a sham janitorial service in whose name the checks were written), *overruled on other grounds by State v. Rogers,* 346 N.C. 262, 485 S.E.2d 619 (1997).

Additionally, defendant was judicially acquitted of the crime for which she was charged in the Hecht's incident. In *State v. Scott,* 331 N.C. 39, 413 S.E.2d 787 (1992), our Supreme Court held "evidence that defendant committed a prior alleged offense for which he has been tried and acquitted may not be admitted in a subsequent trial for a different offense when its probative value depends, as it did here, upon the proposition that defendant in fact committed the prior crime." *Scott,* 331 N.C. at 42, 413 S.E.2d at 788. The Court in *Scott* explained that "[a] person acquitted of a charge should not be required again to defend himself against that charge in subsequent criminal proceedings in which he may become involved." *Id.* at 44, 413 S.E.2d at 789. Therefore,

> [t]he North Carolina Rules of Evidence must be interpreted and applied in light of this proposition: an acquittal and the undefeated presumption of innocence it signifies means that, in law, defendant did not commit the crime charged. When the probative value of evidence of this other conduct depends upon the propo-

sition that defendant committed the prior crime, his earlier acquittal of that crime so erodes the probative value of the evidence that its potential for prejudice, which is great, must perforce outweigh its probative value under Rule 403.

*Id.* at 44, 413 S.E.2d at 790. *Compare State v. Robertson*, 115 N.C. App. 249, 444 S.E.2d 643 (1994) (testimony that defendant told victim he would hurt her like he had hurt someone else, referring to a crime for which he was later acquitted, was admissible to show victim's fear and did not depend on proposition that defendant committed prior crime); *State v. Agee*, 326 N.C. 542, 391 S.E.2d 171 (1990) (testimony that defendant possessed marijuana, despite earlier acquittal of the possession charge, was admissible where that conduct was part of the same "chain of circumstances" which included the charged offense for which defendant was on trial).

As previously stated, the trial court allowed evidence of the prior incident to show lack of a mistake, which equates to proving the likelihood of her guilt. The probative value of the prior detainment necessarily depends upon the proposition that defendant committed the prior crime at Hecht's. Thus in the present case, as

the probative value of evidence of this other conduct [at Hecht's] depends upon the proposition that defendant committed the prior crime, [her] earlier acquittal of that crime so erodes the probative value of the evidence that its potential for prejudice, which is great, must perforce outweigh its probative value under Rule 403."

*Scott*, 331 N.C. at 44, 413 S.E.2d at 790. Following *Scott*, we conclude the trial court in this case erred in admitting evidence of the detainment incident at Hecht's on cross-examination. We also note the trial court was not requested to and did not give a limiting instruction to the jury either at the time the evidence was admitted nor during the jury charge. *See generally* T. M. Ringer, Jr., *A Six Step Analysis of "Other Purposes" Evidence Pursuant to Rule 404(B) of the North Carolina Rules of Evidence*, 21 N.C. CENT. L.J. 1 (1995).

In *Scott*, our Supreme Court concluded that the trial court's error was prejudicial and entitled the defendant to a new trial. *See id.* at 46, 413 S.E.2d at 791. "The test for prejudicial error is whether there is a reasonable possibility that, had the error not been committed, a different result would have been reached at trial." *Id.* The *Scott* Court stated that "[g]iven the similarity of the circumstances" between the

prior accusations and the offense for which the defendant was being tried, "we conclude there is at least a reasonable possibility that had the error in admitting [the 404(b)] testimony not been committed and this evidence excluded a different result would have [been] obtained at trial." *Id.*

In the present case, however, there is not a reasonable possibility that, had the error not been committed, a different result would have been reached at trial. In *State v. Robinson*, 115 N.C. App. 358, 444 S.E.2d 475, *disc. review denied*, 337 N.C. 697, 448 S.E.2d 538 (1994), our Court held that the error under *Scott* in admitting through Rule 404(b) evidence of a prior acquittal was not prejudicial because of the circumstances under which the defendant was caught in a private office, "his self-contradictory and highly improbable explanations for his presence there," and the similarity between the improperly admitted evidence and other evidence to which the defendant did not object. *Id.* at 362, 444 S.E.2d at 477. The circumstances in this case similarly militate a finding of culpability where defendant was caught leaving J.C. Penney with store items that had not been purchased and multiple eyewitnesses watched defendant take the store items.

We also note the "highly improbable explanations" by defendant in this case, such as the claim that defendant intended to bring gifts to children whom she could not name, or the claim that she was walking out of the store to visit a bathroom before exchanging the items when the J.C. Penney store provided a bathroom inside. Moreover, the State presented extrinsic evidence that undermines the defense theory, and thus the jury was not faced with a simple case of witness credibility. For instance, the articles found in defendant's bag were not sold in the store where she claims to have purchased them, and the woman whom defendant said she consulted about exchanging the items was not working when defendant said they spoke. Following *Robinson*, the error in admitting the Hecht's evidence was a non-prejudicial error. Indeed, the only evidence of the Hecht's incident was defendant's testimony, and her testimony only described how she was physically and emotionally mistreated during that prior detainment; it did not greatly detract from her defense.

[2] Defendant also argues the trial court erred by allowing the State to cross-examine her about the Hecht's acquittal pursuant to Rule 608(b) of the North Carolina Rules of Evidence. This argument, however, neither corresponds to the assignments of error it references nor to any other assignment of error in the record. Additionally, the

argument was not presented during trial for the trial court to consider and determine. Our "scope of review on appeal is limited to those issues presented by assignment of error in the record on appeal[,]" and therefore we do not review this argument. N.C.R. App. P. Rule 10(a); *Koufman v. Koufman,* 330 N.C. 93, 97-98, 408 S.E.2d 729, 731 (1991).

[3] Furthermore, defendant argues the trial court erred by denying her motion to dismiss at the close of the State's evidence and at the close of all the evidence. "A motion to dismiss should be denied if there is substantial evidence of each essential element of the charged offense and substantial evidence that the defendant is the individual who committed it." *State v. Foreman,* 133 N.C. App. 292, 298, 515 S.E.2d 488, 493 (1999), *aff'd as modified,* 351 N.C. 627, 527 S.E.2d 921 (2000) (citation omitted). Larceny is the taking by trespass and carrying away of the goods or personal property of another, without the owner's consent and with the intent permanently to deprive the owner of the property and to convert it to the taker's own use. *State v. Boykin,* 78 N.C. App. 572, 576, 337 S.E.2d 678, 681 (1985). The elements of proof are the same for misdemeanor and felony larceny, the only difference being the value or nature of the property stolen. *Id.* The State presented evidence that defendant entered a department store, obtained empty shopping bags from behind a sales desk, placed merchandise owned by the store into those bags, and carried the bags containing the merchandise out of the store without its consent. This is substantial evidence defendant committed larceny and the trial court did not err in denying defendant's motions to dismiss for insufficient evidence.

We have reviewed defendant's remaining arguments that the trial court erred and find them to be without merit. The defendant received a fair trial free of prejudicial error.

No prejudicial error.

Chief Judge EAGLES and Judge HORTON concur.